## PARKERSON v. BORST.

(Circuit Court of Appeals, Fifth Circuit. March 27, 1920. Rehearing Denied May 7, 1920.)

No. 3464.

**1. Attorney and client ⊕⇒106—Relation one of strict trust.**

All relations of agency are affected with a trust, and in no case is the rule more exacting in its requirements than as applied to the relation of attorney and client.

**2. Attorney and client ⊕⇒125—Transaction in which attorney may have adverse interest voidable by client.**

Where an attorney, who had for years invested funds for a client, using his own judgment, sold securities of hers and invested the proceeds in notes of another client, in respect of which he had a personal interest to be served by the investment, the transaction was voidable at her election, irrespective of his good faith, or of damage or benefit to her.

**3. Principal and agent ⊕⇒76(1)—Agent estopped to depreciate value of converted securities.**

An agent who has invested money of his principal in securities of certain face value as reported by him, after selling the same and converting the proceeds, cannot be heard to say that they were of less than face value.

**4. Principal and agent ⊕⇒75—Ratification of unauthorized act of agent must be with full knowledge**

A transaction by an agent, not binding on his principal, because of a personal interest of the agent therein, becomes binding only by deliberate ratification by the principal with full knowledge of the facts.

**5. Bankruptcy ⊕⇒363—Plaintiff not estopped, by proof of claim in bankruptcy, from pursuing proceeds of conversion.**

In an action against an agent for conversion for the unauthorized investment of funds of plaintiff in certain notes, the proving of such notes in bankruptcy against the estate of the maker and the receiving of a dividend thereon by plaintiff *held* not to estop her from proceeding with the action, especially where such proof was made pursuant to an order of the court in the cause, providing that it should be without prejudice to plaintiff.

In Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action at law by Louise Stone Borst against Camilla Putnam Parkerson, testamentary executrix of the estate of William S. Parkerson, deceased. Judgment for plaintiff, and defendant brings error. Reversed, with direction to enter proper judgment on the verdict.

See, also, 256 Fed. 827, 168 C. C. A. 173.

Edwin T. Merrick, of New Orleans, La. (Merrick & Schwarz, of New Orleans, La., of counsel), for plaintiff in error.

E. J. Bowers, of Gulfport, Miss., and D. B. H. Chaffe, of New Orleans, La., for defendant in error.

Before WALKER, Circuit Judge, and CALL and HUTCHESON, District Judges.

HUTCHESON, District Judge. Plaintiff in error was before this court at a former day as appellant. 251 Fed. 242, 163 C. C. A. 398.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

That appeal determined that the court a quo had jurisdiction of the cause, but that the cause, being not of equitable, but of legal, cognizance, the decree must be reversed, and the cause remanded for trial to a jury. This writ of error eventuates from that trial.

The transcript does not purport to contain a complete statement of the evidence, but it sufficiently appears from the admissions in the pleadings, the bills of exceptions, and other portions of the record before us that the undisputed facts are these:

Parkerson, plaintiff in error's testator, was for many years prior to his death a lawyer in the city of New Orleans, whose practice, among other things, extended to the handling and investment of moneys and funds for clients. Among the clients so represented by him was Mrs. Borst, complainant below, who in the year 1908 employed Parkerson to handle her funds for her, paying him annually $500 for his services. The agreement with Mr. Parkerson was silent, except as to his salary, but prior to the matters complained of here Mrs. Borst, through her long course of dealings with him, knew that he exercised full control over her securities, exchanging, buying, and selling them substantially as he saw fit. This was the only evidence in the record upon the subject of the controlling agreement between the lawyer and his client, though it appears that Parkerson rendered her an annual statement, showing the amount of her investments and a list of the securities held for her account.

Among other clients of Parkerson was one Anthony Fabacher, a restaurateur in the city of New Orleans, whose affairs had become so involved that in the year 1908 the management of his business had been taken over by a creditors' committee, and at the time of the matters complained of in this suit such management was still continuing. In the bringing about of this creditors' committee arrangement, Parkerson, as personal counsel for Fabacher, was largely instrumental, and for his services in so doing he received a contingent fee of $25,000 in the form of a note of Fabacher, payment to be deferred until the creditors were paid, and in addition to this indebtedness he was a guarantor with one of the local banks of Fabacher's account; the guaranty ranging from $15,000 to $25,000.

Among the assets of Fabacher was a property in the city of New Orleans, which had been purchased originally for $60,000, and against which, shortly prior to March 30, 1914, there was due the sum of $45,000, of which amount Parkerson held for Mrs. Borst $15,000; the balance of the notes against said property being in the hands of the original vendor. The management of Fabacher's business by the creditors' committee had been attended with considerable success, but on and prior to March 30, 1914, there was still a large amount of unsecured debts unpaid, and it was obvious to Parkerson that unless his client, Fabacher, could be kept upon his feet by the extension of his obligations as they matured, not only would Fabacher fail, but in the ruin that would ensue Parkerson himself would become involved to the extent of his guaranty and the loss of his $25,000 debt.

On or shortly prior to March 30, 1914, the holder of the said $30,000 of Fabacher's notes demanding payment of same and threatening fore-

closure, Parkerson acquired the $30,000 of notes, either for himself or for a client or clients whose money he held, and on April 1, 1914, had in his possession and control the said $30,000 of notes. On some date between April 1, 1914, and July 31, 1914, said Parkerson transferred certain securities of plaintiff to others of his clients, securing therefor their face value in money, and with the proceeds thereof, and other funds which he had to .the credit of plaintiff uninvested, said fund of complainant aggregating $20,000, he attempted to take over for complainant's account $20,000 of said Fabacher's notes; the other $10,000 of the series remaining in his possession.

Thereafter, on the 14th day of February, 1915, Parkerson died, and shortly thereafter Fabacher was adjudicated a bankrupt, and his estate administered in the bankruptcy court. In April, 1915, plaintiff received from Sterling Parkerson, the son and representative of Parkerson, deceased, the assets and properties of hers which had been held by his father, and included in those assets, as delivered to her, were the two notes of Anthony Fabacher, for $10,000 each, in controversy herein.

There is no evidence, nor is it contended, that at the time of the delivery of the said notes to her complainant in express words ratified or assented to the action of her attorney in that transaction, nor does the record contain any complete statement of the evidence upon which the defendant claimed ratification. A bill of exceptions signed by the trial judge, however, shows that there was evidence tending to show that Mrs. Borst had no knowledge of how her securities had been treated by Mr. Parkerson before making her settlement with his executor.

After such receipt by complainant, and on, to wit, the ——— day of July, 1915, complainant, claiming that the action of Parkerson in taking her securities and funds to the extent of $20,000 and substituting therefor the two $10,000 Fabacher notes, was illegal, null, and void, in fraud of her rights, and a conversion of her property, and claiming that she had only then, on, to wit, July ——, 1915, been fully advised of the facts surrounding the action of the said Parkerson, repudiated the ownership of the $20,000 in notes, and demanded that Parkerson's estate either return her the securities originally held by her or pay her the $20,000 in cash which had been diverted from her funds. The testamentary executrix refusing to accede to either of said demands, this action was commenced.

Upon the undisputed facts above set out, it was contended by complainant that Parkerson had in reality owned the Fabacher notes when he attempted to transfer them to her, and that, whether he owned them in fact or not, his action in transferring said notes to her was in bad faith. The defendant, vigorously denying that Parkerson had any personal interest in the notes when he transferred them to Mrs. Borst, and denying that the act of transfer was in bad faith, alleged that at the time of the transfer the securities appeared ample and adequate, and that the action of Parkerson was in the utmost good faith for the protection of the interests of his client, Mrs. Borst.

After the filing of the pleadings in the cause, there accruing in the bankruptcy estate of Fabacher to the credit of the holder of the $20,000 notes the sum of $11,730.92, a rule was entered in this cause, requiring the defendant to show cause why the court should not enter an order directing the trustee in bankruptcy to pay over whatever amount he might hold applicable to the notes, the subject of the controversy, to Mrs. Borst, complainant, without prejudice to the rights of Mrs. Borst in the pending proceedings, to which rule defendant answered, stating in substance, among other things, that respondent has no interest either to refuse or consent to such payment, and concluding:

"Respondent submits the same without contest, for whatever action the court may see fit to take."

Upon the coming in of which answer, and the hearing thereof, the court made the following order:

"It is now ordered by the court that the said rule be made absolute upon Mrs. Louise Stone Borst, complainant herein, making proof of debt as holder of the notes, and surrendering the notes for pro rata payment and cancellation, without prejudice to the rights of any party to this suit."

And thereafter, through E. J. Bowers, her counsel, she made proof in bankruptcy as holder, and secured and received payment on account of the notes of the sum of $11,730.92, which amount was credited upon her claim against plaintiff in error.

The cause having been submitted to the jury upon this record, for them to say whether Parkerson had acted in good faith in the transaction, and with due and legal regard for the interests of his client, Mrs. Borst, and whether, if he had not, she had subsequently ratified his action, resulted in a general verdict for the complainant.

Disposing of the first assignment, that the court should have submitted to the jury the question of jurisdiction by reference to the former appeal, where this question was foreclosed against plaintiff in error, it remains to determine whether any of the other matters presented for review constitute reversible error. These matters fall naturally into four divisions:

(1) That the court committed error in connection with the submission of the issues of the rightfulness of Parkerson's original action, and the damage suffered by complainant, if any;

(2) Complainant's acquiescence in and ratification of his actions;

(3) That the court erred in refusing to charge the jury that complainant was estopped by her proof in the bankruptcy proceedings; and

(4) That the amount of the verdict and judgment was illegally and improperly arrived at.

In order to properly approach a consideration of the assignments which challenged the action of the court with reference to Parkerson's original action, the damage flowing to complainant thereout, and her subsequent ratification of his acts, as presented in the sixth, seventh, eighth, and tenth assignments, it is desirable to declare the imperative

rules of law which underlie the relation of the parties and govern transactions of this kind.

[1] It is a principle of law, of universal application, that all relations of agency are affected with a trust, and that of such relations none is more exacting in its requirements, nor compelling in the performance of them, than the relation of attorney and client. English and American legal history points with unwavering fixity to the recognition at all times, and in all places, of the necessity for the establishment and maintenance of the relation of attorney and client upon a basis of the utmost trust and confidence on the part of the client, and the utmost fidelity and singleness of purpose on the part of counsel. In no relation is the scriptural maxim, that no man can serve two masters, more rigidly enforced than in that of attorney and client, nor is there any relation where disregard of it more certainly nullifies the transaction.

[2] When, therefore, we reflect upon the undisputed facts in this case, and see that, at the time of the transfer of the Fabacher notes to Mrs. Borst, Parkerson, in whom Mrs. Borst had reposed the completest confidence and trust, had, in the transaction in question, instead of the single interest in securing for Mrs. Borst an adequate security, which the law required of him, the additional dual interest, one to protect his client, Fabacher, from foreclosure, and the other, equally, if not more, fatal, to protect himself in the ultimate collection of his $25,000 fee, and from embarrassment on his guaranty, it at once appears that, under the operation of the inflexible and overshadowing rules of law, the attempted transaction of Parkerson with Mrs. Borst's securities lost the form of action, became sterile, and was in law as though it had not been, and this wholly irrespective of the question of good or bad faith on his part, and of damage or benefit to his client.

The rule is thus stated in 21 Ruling Case Law:

"The rule which prevents the agent or trustee from acting for himself, in a matter where his interest would conflict with his duty, also prevents him from acting for another whose interest is adverse to that of the principal. Unless the principal contracts for less, the agent is bound to serve him with all his skill, judgment, and discretion. The agent cannot divide this duty and give part to another. In all cases where, without the assent of the principal, the agent has assumed to act in such double capacity, the principal may avoid the transaction at his election. The doctrine is not based on the idea that the transaction is necessarily an injury to or a fraud upon the principal, but upon the idea of closing the door to temptation and to fraud, and keeping the agent's eye single to the rights and welfare of his principal, and the interdiction is enforced with a strong hand in courts of justice. The principle is one of prevention, not of remedial justice, which operates therefore, however fair the sale might have been, however free from every taint of moral wrong." 21 Ruling Case Law, 829.

In view of these controlling principles, it is evident that the court did not err to the prejudice of plaintiff in error, either when he refused to instruct the jury not to consider the outcome of the Fabacher bankruptcy proceedings upon the issue of Parkerson's good faith, or when he charged the jury that there could be legal bad faith, because under the undisputed facts the court should have instructed the jury

to find for the complainant, unless they found that complainant had adopted and ratified the act.

[3] For the same reasons, and for the further reason that it would not be permitted to Parkerson to question the value of the securities of his client which he converted in the Fabacher transaction, the court did not err in refusing to submit to the jury, as complained of in the eighth assignment of error, the issue of what was the real value of the Dixon note used by Parkerson in the Fabacher purchase. It would be a monstrous proposition of law that an agent, with authority to handle his principal's securities, could in a statement to her advise her that he held securities which he had acquired for her of a certain face value, and thereafter, converting those securities into cash, convert the proceeds, and then contend that they were of less value than their face.

[4] By what has been said it is meant to declare, not that such a transaction as the one in this case cannot be adopted by the principal and made his own, but merely that the transaction, unadopted, has not even the germ of life in it, and, if it ever takes form, does so by virtue of the principal's own action in, after full knowledge of all the circumstances, deliberately and freely ratifying his agent's acts, for, as is said in Ruling Case Law, vol. 21, page 827:

"The right to repudiate the transaction is one that exists for the principal's protection, and he may waive it at his option. If, after a full knowledge of all the circumstances he deliberately and freely ratifies the act of the agent, or acquiesces in it for a great length of time, it will become obligatory upon him, not by its own inherent force, but from the consideration that he thereby waives the protection intended by the law for his own interests, and deals with his agent quoad hoc, discharged of his agency."

"Should an agent have an interest in the transaction, in order for it to stand the burden is upon the agent to show that the principal had knowledge not only of the fact that the agent was buying or interested, but also every material fact known to the agent which might affect the principal, and that having such knowledge he freely consented to the transaction." 21 Ruling Case Law, p. 830.

It is therefore self-evident that the court did not err in refusing to give the charge on ratification, accord, and satisfaction set out in the sixth assignment of error, because that charge ignored the essential element of ratification, a free and deliberate assent of complainant, with full knowledge of all the facts, which issue was properly submitted to the jury by the court in its general charge.

[5] We thus reach the assignment on which counsel seems mainly to rely, that the action of Mrs. Borst in proving her claim in bankruptcy constituted a judicial estoppel, or estoppel of record, against her to further prosecute this suit, in that, as they claim, that action was an affirmance of her title to the notes, and necessarily a disaffirmance of her action for conversion. In 10 Ruling Case Law, p. 954, § 14, it is said:

"Where, in the case of a conversion, the plaintiff, in pursuing his rights, does not show any intention to affirm the taking or the sale, but merely seeks to follow and reclaim the property or its proceeds in whole or in part, from those into whose hands it may have come, he does not thereby waive the wrongful taking, and may still sue the wrongdoer for damages, applying in reduction thereof the property or proceeds he may have received."

If this is a correct statement of the principle, and we think it is, if plaintiff had voluntarily, and without an order of court directing her so to do, filed her claim in bankruptcy as holder of the notes, and had applied the proceeds so obtained by way of credit on her claim, she would not have been estopped to proceed with her suit for conversion, since her action, by any process of reasoning, could not have been construed as the election by her of an inconsistent remedy, but merely a following of some of the proceeds of a conversion, for the purpose of application and credit pro tanto on her claim.

If this be a correct statement of the case in which complainant would stand without the order, what is the effect of the order? In 10 Ruling Case Law, p. 698, § 26, it is said:

"The rule that a party will not be allowed to maintain an inconsistent position in judicial proceedings is not strictly one of estoppel, partaking rather of positive rules of procedure, based on manifest justice, and to a greater or less degree on considerations of the orderliness, regularity, and expedition of litigation."

Certainly, if this is the correct definition of judicial estoppel, and we think it is, no such estoppel could arise against her for doing under the order of the court, made in a proceeding to which the defendant in error was a party, what she could have done without an order, especially as the order directed that she should take the action without prejudice to her rights.

It would, indeed, be a perversion of terms to hold that a judicial order, which on its face declared that no estoppel could arise against her for action under it, could itself furnish the basis of an estoppel. If there arises in this case any estoppel from the action taken in the matter of the rule, that estoppel would arise not against complainant, but against defendant. In 9 Ruling Case Law, p. 957, it is said:

"The doctrine of election of remedies is therefore generally regarded as being an application of the law of estoppel, upon the theory that a party cannot, in the assertion or prosecution of his rights, occupy inconsistent positions."

The defendant in error, on the proceedings for the rule, asserted that she had no interest in the matter one way or the other, and was content for the court to make any order that it saw fit to make; she now attempts to assert, contradictorily, that she had such an interest in the matter as that the very judgment and order which she then affirmed did not concern her, and from which she did not appeal, operates as an affirmative estoppel to discharge her from her debt. The assignment of estoppel is therefore overruled.

There is nothing in the contention made in the ninth, eleventh, and twelfth assignments of error that the verdict of the jury was improperly induced by remarks of the court and counsel, because the record affirmatively shows that after the jury had brought in a verdict for plaintiff, without naming the amount, and the colloquy ensued over the amount, the court did not direct the jury what amount to insert, but merely stated to them, after counsel for complainant had given his recollection of the amount fixed by the testimony:

"If you agree on that, gentlemen, you can insert that amount."

All of these proceedings were had in open court, in the presence of both counsel, and are not subject to the claim of error made against them.

The fourteenth assignment, which assigns error in the amount of the verdict of the jury, cannot be considered, because there is no statement of the evidence in the record, and no basis for review of the amount of the verdict.

The thirteenth assignment, however, must be sustained. The court should have entered a judgment on the verdict, with interest at 5 per cent. from the date of the judgment, and the judgment was erroneous, both in the date from which the interest was allowed to run and in the rate of the interest.

The judgment must therefore be reversed, with directions to the court below to enter the proper judgment nunc pro tunc on the verdict.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes