383 P.2d 119

**TUCSON TITLE INSURANCE COMPANY, a corporation, Appellant,**

v.

**Frank D'ASCOLI and Rose C. D'Ascoli, husband and wife, Appellees.**

**No. 7043.**

Supreme Court of Arizona.

In Division.

June 19, 1963.

232

Odin B. Dodd, Tucson, for appellant.

Martin S. Rogers, Tucson, for appellees.

BERNSTEIN, Chief Justice.

This appeal is taken from a jury verdict awarding $6,620 to plaintiffs, appellees, in their action against appellant title company, hereafter referred to as defendant.

Plaintiffs sued for damages alleged to have resulted from the wrongful disbursement of funds deposited by them in escrow with the defendant. They claimed that defendant failed to adhere to instructions in several respects, in violation of its duty as escrow agent.

Defendant appeals the refusal of the lower court to direct a verdict at each successive stage of the trial, as well as the refusal to grant judgment n. o. v., and to order a new trial. Upon review of a motion for directed verdict or judgment n. o. v., we must take that view of the evidence most favorable to the verdict and from that evidence and the inferences reasonably and justifiably to be drawn therefrom, determine whether under the law, the verdict can be sustained. In re Stitt's Estate, 93 Ariz. 302, 380 P.2d 601 (1963).

There are fourteen assignments of error, which for brevity can be reduced to three basic contentions. These are, first, no wrongful act has been proved, second, no damages have been sustained, and third, in any event plaintiffs have ratified the transaction.

On September 19, 1957, plaintiffs delivered their check for $6,620 which was to be used by defendant acting as escrow agent in the acquisition of an $8,000 note secured by a second mortgage. At that time they also signed the escrow instructions, which provided:

"I * * * hand you herewith check * * * in the sum of $6,620.00, which you may use in accordance with the instructions of * * * mortgagees, *when you hold for me* * * *:

"(a) A promissory note * * * in the sum of $8,000.00 * * *

"(b) A realty mortgage * * * [on property] *known as 8301* East Speedway, Tucson,

"(c) Your standard form of Mortgagee's Policy of Title Insurance * * * [title] subject only to:

"The above-described mortgage; current non-delinquent taxes and assessments; restrictions, easements, and rights-of-way of record; * * *

"(d) A fire insurance policy, * * *

"(e) *If money is not used with* (sic) *15 days you are to hold for my further instructions.* (Emphasis added.)

"Dated this 19th day of September, 1957"

It was understood that the property was encumbered with a first mortgage of $24,-000.

In the lower court, the plaintiffs asserted that the defendant breached the agreement by using plaintiffs' money without awaiting instructions after 15 days had passed, in violation of paragraph (e); that defendant purchased a mortgage on property other than that "known as 8301 East Speedway" and other than that which plaintiffs proposed to buy; and that defendant failed to obtain insurance on the mortgage purchased.

■ The evidence shows that plaintiffs are correct in claiming a violation of the instructions for failure to consult with them after 15 days as to the further use of their money. We do not find tenable defendant's position that it was unnecessary to obtain instructions before making the purchase because the money had been "used" within the time limit. The instructions directed the defendant title company to hold plaintiffs' money until certain specified acts had been performed, at which time the money could be "used." Thus, the defendant agreed not to "use" the money until it had complied with the terms of the agreement. It is now arguing that the agreement authorized the defendant to disburse plaintiffs' money according to the instructions of the vendor of the second mortgage, as soon as the vendor placed his signature on the assignment of mortgage and endorsed the note to plaintiffs. This would bring the defendant within the 15-day time limit for the assignor's signature was obtained on the same day plaintiffs entered into the escrow agreement and deposited their money. However, under the agreement, the "use" contemplated was not the mere signing of papers. A mortgage, subject only to the encumbrances listed in the agreement was to be acquired before plaintiffs' money was to be used. Title insurance was to be issued on the mortgaged property. Fire insurance was to be provided. None of these requirements had been carried out when the assignor signed papers of transfer. Thus, the money was not "used" at that time.

Neither was it used within the 15 ensuing days. There is no evidence that

any further action was taken with respect to the purchase for a period well in excess of 15 days. Under the instructions, if the conditions were not satisfied so that the money could be used within 15 days, the money was to be *held* pending further instructions from the plaintiffs. This was not done.

■ Having failed to complete the entire transaction within the time allotted, the defendant was without authority to go ahead with the disbursement of plaintiffs' funds or to do anything at all on behalf of the plaintiffs. It was not to take further action after the 15 day period had elapsed, without first consulting the plaintiffs, as required under paragraph (e) of the agreement. It is of no avail to argue that most of the provisions were carried out, albeit at a time later than that agreed upon. Those provisions were of no effect after the expiration of the 15 days.

The record discloses that the escrow was handled with little, if any, finesse. Plaintiffs' money was pooled with the proceeds of the first mortgage. The total, $30,421.46, was then used to pay off such debts on the property as the construction loan, interest, and advances on a previous mortgage. For nearly three months releases from lienholders were being negotiated. Plaintiffs' second mortgage was at last recorded along with the first mortgage on December 11, 1957, but the first mortgage had been postdated and plaintiffs'

funds used to make interest payments on it to the first mortgagee. Although recording was accomplished on December 11, 1957, the final disbursement of plaintiffs' funds was not actually made until December 20, 1957.

■ The failure of the defendant to follow escrow instructions was a breach of its fiduciary duty for which it must bear the consequences. Rowland v. First State Bank, 121 Kan. 51, 245 P. 740. An escrow agent is held to strict compliance with the terms of the escrow agreement, and is liable for all damages resulting from any deviation. Malta v. Phoenix Title & Trust, 76 Ariz. 116, 259 P.2d 554. In the case cited we described the relation between parties to an escrow and the escrow agent as one of trust and confidence, saying that the agent is a trustee. In his fiduciary capacity the agent must conduct the affairs with which he is entrusted with scrupulous honesty, skill, and diligence. Tucker v. Dr. P. Phillips Co., 139 F.2d 601 (5th Cir.); Kelly v. Steinberg, 148 Cal.App.2d 211, 306 P.2d 955. See also Rest. Trusts § 32, comment d. It is settled that a purported delivery of a deed or other property in escrow is of no effect if made before compliance with the conditions of the escrow agreement. Angell v. Ingram, 35 Wash.2d 582, 213 P. 2d 944, 15 A.L.R.2d 865; Hart v. Barron, 122 Mont. 350, 204 P.2d 797. Thus, the transaction was unauthorized and plaintiffs

were not bound. Parkerson v. Borst, 264 F. 761 (5th Cir.). It follows that the jury was justified in finding a violation of the conditions of the escrow agreement and in assessing the damages in a sum equal to that deposited in escrow.

It is contended, however, that plaintiffs ratified the transaction as a matter of law and therefore are estopped to pursue this action. In support of this contention, defendant relies on conduct of the plaintiffs which he argues amounts to the taking of inconsistent positions once they learned of the irregularities which characterize this transaction.

Plaintiffs had no contact with the defendant title company after they deposited their check on September 19, 1957, until the early part of 1958 nor had they received their policy of title insurance when the first mortgagee notified them that its mortgage was in default. The escrow had been closed on January 3, 1958, and the second mortgage papers transferred to a savings and loan association for collection. First payment on the second mortgage was to have fallen due on the last day of February, 1958. Having been informed the first mortgage was in default, plaintiffs made an investigation and learned of the manner in which the escrow had been handled. They obtained from the savings and loan association the note endorsed to them. Plaintiffs' attorney then wrote a letter to the endorser on the note declaring the note payable in full, and a copy of the letter was also mailed to the defendant as it included a demand for the return of the money had and received by the defendant title company.

Defendant contends that plaintiffs' position is inconsistent in the present action. That by taking possession of the note and demanding payment from the endorser, plaintiffs committed an act of ratification, which estops them from suing for damages. Also relied upon by defendant as an instance of estoppel by ratification, inconsistent with plaintiffs' present position, was plaintiffs' participation in the foreclosure action brought by the first mortgagee on April 25, 1958. Plaintiffs filed an answer to the complaint served on them, admitting an interest in the mortgaged property, but made no attempt to redeem. Another alleged instance of estoppel by ratification involved the failure of plaintiffs to take immediate action when they learned that a mistake had occurred which caused them to believe they had a mortgage on property other than that referred to in the agreement as "8301" East Speedway. Although the number 8301 had been assigned to the property on which plaintiffs held the second mortgage, the owner of a neighboring house had chosen to use that number without taking steps to change the records in the office of the zoning commissioner. Our decision makes it unnecessary to resolve the problems raised

by this particular assertion, although much is made in the briefs as to its effect on the respective rights of the parties to this lawsuit.

■ We are urged to hold that the foregoing, as well as the fact that plaintiffs still have the note and have not shown it to be uncollectible, constitutes a ratification which estops plaintiffs from recovering in this action. The issue of estoppel by ratification was submitted to the jury, and, we think, properly so. That the plaintiffs recognized the realities of the situation and took steps to protect whatever interests they had should not operate to their prejudice. It is consistent for one who has been deprived of his property through the fault of another to seek to recover that property or the proceeds thereof. Such action does not operate in affirmance of the wrongful disposition and the injured party may still sue for damages applying what he has recovered in reduction thereof. Parkerson v. Borst, 5 Cir., 264 F. 761, supra. The Parkerson case was similar in principle to the one at bar, involving the breach of a fiduciary duty and a claim of ratification in the ensuing action for damages. There the court held that plaintiff was entitled to damages although she held notes purchased for her through breach of a fiduciary duty. The court said,

" * * * [H]er action * * * could not have been construed as the election by her of an inconsistent remedy, but merely a following of some of the proceeds of a conversion, for the purpose of application and credit pro tanto on her claim." 264 F. at 767.

The issue of estoppel by ratification was resolved by the jury under proper instructions, in favor of the plaintiffs.

■ Finally, defendant demands a new trial on the grounds that the jury may have awarded their verdict on the basis of an erroneous instruction. The jury was told that it could not find damages for failure to issue title insurance, unless the non-issuance damaged the plaintiffs. Defendant complains that this authorized the jury to return a verdict for plaintiffs for failure to issue a policy of title insurance when there was no evidence whatsoever of any defect in title. We do not agree. Taking the instructions in their entirety, the overall effect was to permit a verdict for plaintiffs only if it was found that the various alleged breaches of escrow instructions had been committed by the defendant. We do not consider instructions piecemeal. Musgrave v. Githens, 80 Ariz. 188, 294 P.2d 674.

The judgment is affirmed.

STRUCKMEYER and JENNINGS, JJ., concurring.