**EASTERN ATLANTIC TRANSPORTATION AND MECHANICAL ENGINEERING, INC., Appellant,**

v.

**Harry L. DINGMAN, Respondent.**

No. WD 37956.

Missouri Court of Appeals,
Western District.

March 24, 1987.

Steven C. Effertz, Independence, for appellant.

Robert J. Campbell, Overland Park, Kan., for respondent.

Before GAITAN, P.J., and TURNAGE and MANFORD, JJ.

GAITAN, Presiding Judge.

The plaintiff-appellant Eastern Atlantic Transportation and Mechanical Engineering, Inc. (Eastern) appeals from a summary judgment in favor of Harry L. Dingman, defendant/third-party plaintiff (Dingman). Eastern sued Dingman for failing to collect and distribute the proceeds of a $68,000 letter of credit from John Williams, R.L.T. Construction Company, and Robert L. Thompson, which Dingman held in escrow as the escrow agent. Dingman filed a third-party claim for indemnification against Thompson. The trial court found that Dingman was entitled to offset Eastern's $68,000 claim with a $100,000 judgment in favor of third-party defendant Thompson against O.C.G. Enterprises, Inc. (Eastern's predecessor-in-interest).

Eastern alleges the trial court erred by (1) permitting Dingman to use a judgment in favor of Thompson and against O.C.G. Enterprises, Inc. as a set-off; and (2) dismissing Eastern's count for punitive damages. The judgment of the trial court is affirmed in part and reversed in part and remanded for a trial on the merits.

The facts here are confusing in that they involve two unrelated transactions and multiple corporate entities. However, we shall attempt to summarize them as follows.

### SOURCE OF THOMPSON'S SET–OFF CLAIM

O.C.G. Enterprises, Inc., a Massachusetts corporation, was operated by George

Osserman, its president. In December, 1975, Osserman purchased an apartment project in Kansas City, Missouri from a Missouri general partnership named Hidden Valley Associates (HVA). That project became encumbered by a $3,200,000 construction loan owed to B.F. Saul Real Estate Investment Trust (Saul). Saul foreclosed on its collateral and obtained title to the project at a courthouse sale for $721,-098.23 less than its loan. Thereafter, Saul sued HVA for the deficiency. HVA in turn, by third-party action, sued Osserman and O.C.G. on June 20, 1976. A settlement was reached whereby O.C.G. became indebted to HVA for $100,000. Osserman negotiated his personal release as part of the settlement. This settlement was reduced to a judgment against O.C.G. and in favor of HVA and was entered on September 4, 1979. Although HVA had ten partners, only four of them were involved in this project. Of the four, Thompson contributed most of the money to pay Saul and, as a consequence, the other three assigned their interest in the judgment against O.C.G. to Thompson.

## BASIS FOR ACTION AGAINST DINGMAN

In early 1976, R.L.T. Construction Company,[1] John Williams, and Robert Thompson sold an apartment project to O.C.G. However, as a result of title problems, the project was resold to Thompson, R.L.T. and Williams. In connection with the resale, Thompson and Williams executed a note for $68,000 secured by a letter of credit. In December, 1976, that letter of credit was placed in escrow with Thompson's attorney, Dingman. Dingman was to act as escrow agent and collect the letter of credit and distribute the proceeds to O.C.G. if the condition of the escrow agreement was met. Dingman failed to present the letter of credit at the bank before its expiration date (January 6, 1978), and he did not pay over the $68,000 to O.C.G. Thereafter, on June 16, 1978, O.C.G. sued Dingman. On July 13, 1978, Thompson signed a written agreement indemnifying Dingman from all

expenses incurred by reason of the lawsuit filed by O.C.G. O.C.G.'s suit was dismissed without prejudice on April 24, 1979 for failure to prosecute.

## O.C.G. ASSETS

In January of 1976, O.C.G. assigned its assets in general assignment to Prodamat, N.V., an offshore holding and investment company, as collateral for a $2,000,000 loan. O.C.G. supplemented the assignment to Prodamat on February 6, 1978, by adding certain specific claims, including, "all claims against Harry D. Dingman, R.L.T. Construction Company, John M. William and Robert L. Thompson, of Kansas City, Missouri." O.C.G. defaulted on the note. Thereafter, Prodamat foreclosed on its security on December 29, 1978, selling all of O.C.G.'s assets on the same day to Ellis, Walther & Company.

The next day, Ellis, Walther & Company assigned O.C.G.'s assets, including the above-described claim, to Executive Management Trustees Inc., an Ohio corporation. Executive Management Trustees (Ohio) assigned the O.C.G. assets to Executive Management Trustees (Nevada) on September 25, 1981. On July 21, 1982, Executive Management Trustees (Nevada) filed this lawsuit. The issues raised and relief sought against Dingman are the same as that sought in the suit filed by O.C.G. against Dingman in 1978 and dismissed in 1979. Executive Management Trustees (Nevada) sold the O.C.G. assets to appellant Eastern Atlantic Transportation and Mechanical Engineering, Inc. on January 14, 1984. The above scenario illustrates how Eastern now asserts this claim based upon Dingman's failure to collect and distribute the $68,000 letter of credit to O.C.G.

Dingman immediately filed a third-party claim against Thompson for indemnification. Thompson's answer acknowledged his duty to indemnify Dingman and asserted, as a counterclaim against plaintiff, Thompson's $100,000 judgment against O.C.G. as a set-off. Thompson's counsel

---

1. RLT Construction Company is owned by third-party defendant Thompson.

then assumed Dingman's defense in this case.

## I.

We begin our analysis with the consideration of § 509.480 RSMo which states:

Except as otherwise provided by law as to negotiable instruments, every assigned claim shall be subject to be reduced to the extent of all counterclaims which the obligor had against the plaintiff's assignor *at the time of notice of the assignment.* (emphasis added)

The trial court found that Thompson and Dingman had no notice of the assignment of O.C.G.'s claim until the petition asserting the claim was filed by Executive Management Trustees (Nevada) on July 21, 1982. Thompson had a counterclaim for set-off against O.C.G. at the time of notice of the assignment, since the $100,000 judgment against O.C.G. in favor of Thompson was entered on September 4, 1979. Therefore, the trial court concluded that the assigned claim of O.C.G. asserted by Eastern could be offset by Thompson's $100,000 judgment against O.C.G.

■ Plaintiff argues that its claim is against Dingman, not Thompson, and Thompson is not the "obligor" referred to in § 509.480 RSMo. Plaintiff states that it has no claim against Thompson because all that was required of Thompson under the sales contract was for Thompson to procure a letter of credit, which he did. Plaintiff argues that its only cause of action is against Dingman as escrow agent for failing to collect on the letter of credit and distribute the money to O.C.G. Thus, plaintiff contends that Thompson's $100,000 judgment could not be offset against plaintiff's claim against Dingman.

We disagree with plaintiff's argument. Thompson agreed to indemnify Dingman against any claim asserted by O.C.G., and Thompson's attorney assumed Dingman's defense of this lawsuit. Any amount for which Dingman is liable ultimately will be paid by Thompson. If O.C.G. were the plaintiff instead of Eastern, Thompson would be paying O.C.G. with one hand, and asserting his judgment against O.C.G. with the other hand. Even though O.C.G. was unaware of the indemnity agreement and had no duty to notify Thompson as Dingman's *indemnitor,* O.C.G. failed to notify Dingman, who in turn might have notified Thompson.

■ Furthermore, the documents by which the assignments were accomplished, list the assigned claim as "all claims against Harry D. Dingman, RLT Construction Company, John M. Williams, *and Robert L. Thompson* of Kansas City, Missouri." (emphasis added) Apparently at the time of the assignments, O.C.G. thought it had a claim against Thompson, even though plaintiff now argues otherwise. In spite of this, O.C.G. gave no notice to Thompson (or Dingman) of the assignment. Although Eastern did not sue Thompson, that does not prevent him from utilizing the judgment pursuant to § 509.-480 as third-party defendant and indemnitor.

Plaintiff also argues that § 509.480 should not be applied to allow the set-off because plaintiff's claim against Dingman was not "assigned", but was foreclosed upon by Prodamat. Plaintiff asserts that under the Missouri Bulk Sales Act, as presently codified in § 400.6–103(3) RSMo, a foreclosing creditor is not required to give notice to other creditors when it forecloses upon its security interest.

Plaintiff's argument misses its mark. We are not presently concerned with Thompson's ability to collect his judgment as against a secured creditor who has foreclosed on Thompson's judgment debtor (O.C.G.). We are concerned with whether the multiple transfers of O.C.G.'s assets, (i.e., the claim against Dingman) can cut off Thompson's set-off rights against the assignee. The answer comes from the Missouri assignment statute, § 509.480, not from the Bulk Sales Act or its successor § 400.6–103(3).

■ In Missouri, any language which shows an intent to clearly and unconditionally transfer a chose in action can operate as an assignment. *See Greater Kansas City Baptist & Community Hosp. Ass'n,*

*Inc. v. Businessmen's Assurance Co.*, 585 S.W.2d 118, 119 (Mo.App.1979).

■ The documents by which O.C.G.'s assets were transferred clearly show that O.C.G. assigned its assets to Prodamat as collateral for a loan. When Prodamat foreclosed, it clearly and unconditionally "assigned, transferred and set over" all O.C.G.'s assets to Ellis, Walther. As part of this assignment, O.C.G. executed a "Quit Claim of Interest" which stated:

> It being the intent of this instrument to insure the fact that all of O.C.G.'s assets have been assigned to Ellis, Walther in accordance with the instructions of Prodamat Holdings, B.V. and pursuant to the *original assignment* of assets [by O.C.G. to Prodamat] on January 23, 1976. (emphasis added)

Moreover, plaintiff's Amended Petition states, "[t]hat the claim upon which this cause of action is based upon was *assigned* by O.C.G. Enterprises, Inc. ... until said claim is now the property of plaintiff." (emphasis added)

We feel that the language used in the documents shows a clear and unconditional intent to transfer O.C.G.'s assets. We reject plaintiff's attempt to avoid the application of § 509.480. It may be true that O.C.G.'s conditional assignment to Prodamat as collateral was not an immediate, absolute divestiture of all of O.C.G.'s right or interest therein. *See e.g., C & M Developers, Inc. v. Berbiglia, Inc.*, 585 S.W.2d 176, 181 (Mo.App.1979). That assignment, however, became absolute when O.C.G. defaulted. Therefore, we find that O.C.G.'s claim against Dingman was assigned several times over within the meaning of § 509.-480.

The case at bar is a classic example of misuse of the assignment mechanism in an attempt to defeat a valid judgment. Osserman admitted in his deposition that the only reason he did not object to the $100,-000 judgment being entered against O.C.G. was because by that time (September 4, 1979), O.C.G. was only an "empty shell." He commenced his plan of avoidance without notice to Dingman or Thompson. We find that O.C.G.'s assignee cannot avoid Thompson's right of set-off since no notice was given to Dingman or Thompson of the series of assignments. The trial court properly considered the set-off pursuant to § 509.480 RSMo. However, the application of that set-off must await a trial on the merits of the plaintiff's claims.

## II.

Plaintiff seeks punitive damages of $100,000 in Count II, alleging that Dingman intentionally breached his duty as escrow agent in order that his client, Thompson, could benefit by Dingman's failure to perform.

The trial court held that Eastern seeks punitive damages solely because of Dingman's dual status as Thompson's attorney and as escrow agent. O.C.G. was aware of Dingman's relationship with Thompson at the time that Dingman was chosen to be the escrow agent. Thus, the trial court found that O.C.G. "waived any claim that it might otherwise have to Dingman serving as escrow agent," and dismissed plaintiff's claim.

■ We think the trial court has oversimplified plaintiff's claim. An attorney of the obligor may act as escrow agent if he can act as an individual and not as attorney for the obligor in carrying out his escrow duties. 28 Am.Jur.2d *Escrow* § 13; *Cradock v. Cooper*, 123 So.2d 256, 257 (Fla. Dist.Ct.App.1960); *See also A.T. Knopf, Inc. v. Richardson*, 674 S.W.2d 174, 176 (Mo.App.1984). Even though O.C.G. may have known that Dingman was Thompson's attorney, this does not mean that O.C.G. knew that Dingman would act for the benefit of his client, and not act as an individual in carrying out his escrow duties.

Defendants argue that plaintiff has failed to plead anything more than breach of contract. Generally, punitive damages are not recoverable for breach of contract. An exception to this rule exists, however, where the breach amounts to an independent, willful tort. *Smith v. Amer. Bank & Trust Co.*, 639 S.W.2d 169, 176 (Mo.App. 1982). We find that plaintiff has alleged

an independent tort of breach of fiduciary duty in order to seek punitive damages.

An escrow agent owes a fiduciary duty to those parties for whom he holds property. *Progressive Iron Works Realty Corp. v. Eastern Milling Co.*, 155 Me. 16, 150 A.2d 760, 762 (1959). Thus, the duty imposed upon Dingman is by virtue of a fiduciary relationship created by the escrow agreement. The breach of such duty constitutes a tort. *See Otto v. Imperial Casualty & Indemnity Co.*, 277 F.2d 889, 893–94 (8th Cir.1960), quoting *Kohnle v. Paxton*, 268 Mo. 463, 188 S.W. 155, 159 (1916) ("a tort is a wrong to another in his rights created by law or existing in consequence of a relation established by contract ..."). An escrow agent's failure to strictly follow the terms of the escrow agreement is a breach of his fiduciary duty. *Tucson Title Ins. Co. v. D'Ascoli*, 94 Ariz. 230, 383 P.2d 119, 121 (1963). Further, a fiduciary must act scrupulously and honestly in carrying out his duties. *Id.* 383 P.2d at 121–122.

The condition of the escrow was that if no lawsuit was pending against Thompson, Williams, or R.L.T. Construction by Johnson County National Bank on January 6, 1978, the $68,000 proceeds of the letter of credit were to be delivered to O.C.G. This condition was met in that no suit was pending. Dingman, however, failed to fulfill his duties under the escrow agreement of collecting the letter of credit and delivering the $68,000 to O.C.G. Thus, plaintiff has pled that Dingman breached his fiduciary duty by deliberately failing to follow the escrow instructions. *See McKeehan v. Wittels*, 508 S.W.2d 277, 279–80 (Mo.App.1974). Plaintiff also has alleged that Dingman acted intentionally, without just cause or excuse, in order to benefit his client, Thompson. We find that plaintiff has pled sufficient facts to state a claim for punitive damages. *See Union Petrochem, Inc. v. Glore*, 498 F.Supp. 14, 15–16 (W.D.Mo.1980). Dingman's statements as to why he did not fulfill his duties as an escrow agent should be submitted to the trier of fact for consideration.

We also reject Dingman's argument that this punitive damage claim cannot be assigned since it is an unliquidated tort claim. The test used to determine whether a cause of action is assignable is whether or not it would survive to the personal representative. *Beall v. Farmers' Exchange Bank of Gallatin*, 76 S.W.2d 1098 (Mo.1934); *Emmendorfer v. Crader Tire and Retread Service, Inc.*, 670 S.W.2d 548, 549 (Mo.App.1984). In Missouri, where a cause of action for which punitive damages may be recovered survives, the claim for punitive damages also survives. *State ex rel. Smith v. Greene*, 494 S.W.2d 55 (Mo. banc 1973).

Although a claim for set-off is treated as an admission of the plaintiff's claim in some jurisdictions, other jurisdictions allow a defendant to plead a general denial as well as a set-off claim. 80 C.J.S. *Set-off and Counterclaim*, § 60. We believe the latter to be the better rule. The court in *Brandtjen & Kluge v. Hunter*, 235 Mo.App. 909, 145 S.W.2d 1009, 1014 (1940), explained:

> when a set-off or a counterclaim is pleaded, it becomes a part of a single controversy between the parties, requiring only one verdict and one judgment according to the facts. * * * 'If, plaintiff's note with interest exceeds the amount defendant may recover on his counterclaim, then plaintiff would be entitled to recover in replevin ... If, on the other hand, recovery on defendant's counterclaim should equal or exceed the amount of plaintiff's note, then defendant should have judgment for the difference, and plaintiff would fail in replevin.' (citation omitted)

Defendants clearly dispute plaintiff's claims and denied the claims in their Answers. We have determined that no factual dispute exists as to Thompson's right to set-off any amount plaintiff might recover with Thompson's $100,000 judgment against O.C.G. We note, however, that a claim for set-off against an assignee, such as Eastern, may be used only to reduce any recovery to which Eastern might be entitled. If it should be determined that East-

ern is entitled to less than $100,000, Thompson may not be awarded a judgment against Eastern for the difference due to Eastern's status as an assignee. *See Standard Insulation & Window Co. v. Dorrell,* 309 S.W.2d 701, 705 (Mo.App.1958).

This case is reversed and remanded for a determination of the merits of plaintiff's claims both for actual damages (Count I) and for punitive damages (Count II). Upon trial and a finding of an obligation owed by defendants to plaintiff, a set-off may be allowed, consistent with this opinion.

All concur.