777 P.2d 672

George FRETZ, individually and dba George Fretz Realty; David Lutin; and Richard Heider aka Rico Heider, Plaintiffs–Appellees,

v.

FIRST AMERICAN TITLE INSURANCE COMPANY, an Arizona corporation, Defendant–Appellant.

No. 1 CA–CV 88–150.

Court of Appeals of Arizona, Division 1, Department D.

May 30, 1989.

Reconsideration Denied July 19, 1989.

A. Alexander Katz, Phoenix, for plaintiffs-appellees.

Ronald B. Fineberg, Phoenix, for defendant-appellant.

## OPINION

KLEINSCHMIDT, Judge.

This is an action by a real estate broker and two real estate salesmen to recover commissions on a sale of real property. The defendant, First American Title Insurance Co., is an escrow agent. The escrow instructions directed First American to pay the commission out of the proceeds of the sale received in escrow. The escrow agent was also the trustee on a deed of trust securing the sale. When the purchaser of the property defaulted on his payments, First American conducted a trustee's sale and disbursed the proceeds to the seller without paying the plaintiffs' commissions. We reject First American's argument that it had no right or obligation to pay the proceeds of the trustee's sale as directed by the terms of the escrow instructions, and accordingly, we affirm the trial court's decision entering summary judgment in favor of the plaintiffs.

The facts are undisputed. Appellees George Fretz, David Lutin and Richard Heider are licensed real estate agents. St. Moritz Realty, Ltd. was the owner of a seventeen-acre parcel of land in Maricopa County. Through appellees' efforts, St. Moritz entered into an agreement to sell the parcel to Sergio J. Misztal on July 25, 1984, and on that same date the parties executed escrow instructions naming Security Title Agency as escrow agent. The escrow was later transferred from Security Title Agency to appellant First American Title Insurance Company, and the parties agreed that First American's name would be substituted for that of Security Title Agency wherever used in the escrow instructions.

The agreed purchase price for the seventeen-acre parcel was $2,784,000. The agreement provided that Misztal would pay that price with a $15,000 nonrefundable earnest money deposit, $65,000 in addition-

al deposits, $1,437,888 in additional cash at closing, and $1,266,112 in the form of a promissory note and deed of trust. Concerning the note and deed of trust, the escrow instructions provided:

Buyer shall make quarterly interest only payments based on the eleven (11%) percent simple interest per annum up to and including May 15, 1985. Thereafter, interest shall be increased to thirteen (13%) percent simple interest per annum and payable in quarterly interest only payments until January 10, 1986, at which time the entire principal balance, together with any interest accrued thereon shall be due and payable; there shall be no penalty for prepayment of this Note; and Buyer shall have the right to prepay the unpaid balance or any portion thereof at any time prior to the due date without penalty; *Seller agrees to direct the Trustee under the Deed of Trust to use the proceeds collected hereunder to satisfy any and all obligations of the Seller, with respect to the property, prior to the release of any funds to Seller.* (Emphasis added.)

An addendum to the purchase agreement also referred to appellees' commissions:

14)

. . . .

a) Seller further agrees that his agent, is a licensed Arizona real estate broker, and is the recipient of the total commission of $278,400.00 upon closing hereunder. Said commission shall be treated as a separate escrow with [First American], and shall be disbursed by [First American] on behalf of the broker as follows:
(1) to George Fretz Realty, the sum of $53,312.00 for the benefit of David Lutin, a licensed Arizona real estate salesman;
(2) to George Fretz Realty, the sum of $53,312.00 for the benefit of Rico Heider, a licensed Arizona real estate salesman;
(3) to SJM Pacific Corporation, a licensed brokerage corporation in the State of Hawaii, the sum of $171,776.00, paid on behalf of George Fretz Realty, pursuant to and in accordance with Arizona Revised Statute, Section 32–2163;

(4) Payments outlined in paragraphs 14) a)(1) and 14) a)(2) shall be paid 50% upon the Close of Escrow on the original eight (8.0) acres; and, 50% upon the Close of Escrow on the second acres [sic];
(5) Payment outlined in paragraph 14) a)(3) shall be paid in full (100%) on Close of Escrow on the original eight (8.0) acres.

The transaction closed on March 12, 1985. In accordance with the purchase agreement and escrow instructions, appellees Heider and Lutin each received $26,656 at that time. After the closing, First American's escrow officer gave instructions to First American's account servicing department concerning the $1,266,112 note and deed of trust. The instructions included the following:

PAYEE: COMMISSIONS TO: GEORGE FRETZ REALTY $26,656 on behalf of David Lutin $26,656 on behalf of Rico Heider due o/b 1/10/86.

These instructions were entered in First American's computer system.

The obligor under the note and deed of trust defaulted on a balloon payment of $1,266,112 due in January 1986. Thereafter, St. Moritz's attorney wrote to First American and instructed it to initiate a trustee's sale under the deed of trust. St. Moritz's attorney also executed and delivered to First American a statement of breach or nonperformance indicating the obligor's defaults. John Hickey, First American's officer in charge of foreclosure sales, received St. Moritz's letter. St. Moritz's attorney thereafter incorrectly advised Hickey that there was no escrow collection agent involved.

First American conducted a trustee's sale at its offices in May of 1986. A junior lienor bid one dollar more than the total amount owed, and received a trustee's deed to the nine acres subject to St. Moritz's deed of trust. After the junior lienor's payment was received, Hickey did not remit the net proceeds to First American's account servicing department, but rather transmitted them directly to St. Moritz by wire. Consequently, appellees did not receive the balance of their commissions in

accordance with paragraph 14(a)(4) of the addendum to the purchase agreement.

Appellees thereafter commenced the instant action against St. Moritz and First American. Partial summary judgment in their favor was entered against St. Moritz pursuant to Rule 54(b), Arizona Rules of Civil Procedure, and St. Moritz did not appeal. Appellees thereafter moved for partial summary judgment against First American, and this was granted. The trial court entered formal judgment awarding appellees Lutin and Heider each the sum of $26,656 and awarding them attorney's fees of $12,000 and costs in the amount of $412.75. This timely appeal followed.

First American argues that the funds it received from the trustee's sale in its capacity as trustee under the deed of trust were not received by it in its capacity as escrow agent. It insists that under A.R.S. § 33–812 (Supp.1988) its only choice was to pay the net proceeds of the trustee's sale directly to St. Moritz. First American further contends that by doing so it did not violate the escrow instructions, because those instructions would have come into play only if the obligor under the note and deed of trust had actually made the balloon payment due in January 1986, which it did not do. First American argues:

> As to the escrow being administered by First American, there was no performance by the Trustor as the Trustor did not make its payment and thus First American had no duties to anyone including the Brokers. Therefore, First American could not have breached any duties to the Brokers to pay the Brokers their real estate commission because the Trustor did not make the payments as required by the promissory note.

First American also argues that because A.R.S. § 33–812 defined its duties with respect to the proceeds of the trustee's sale, it would only have been required to pay appellees their commissions if the obligation to pay those commissions had been secured by the deed of trust.

We cannot agree with First American's analysis. Arizona Revised Statutes § 33–812 provides:

A. The trustee shall apply the proceeds of the trustee's sale as follows:

1. To the costs and expenses of exercising the power of sale and of sale, including the payment of the trustee's fees and reasonable attorney's fees actually incurred.

2. To the payment of the contract or contracts secured by the trust deed.

3. To the payment of all other obligations provided in or secured by the trust deed.

4. To the junior lienholders or encumbrancers in order of their priority. After payment in full to all junior lienholders and encumbrancers payment shall be made to the trustor.

B. The trustee may, in his discretion, instead of any one or more of the applications specified in subsection A, elect to deposit the balance of such proceeds with the clerk of the superior court in the county in which the sale took place. Upon deposit of the balance of such monies the trustee shall be discharged from all responsibility for acts performed in good faith according to the provisions of this chapter, and the clerk shall deposit the amount with the county treasurer subject to order of the superior court in the county upon the application, by civil action, of any interested party.

It is true that appellees' right to receive their commissions was not part of the "contract or contracts secured by the trust deed" within the meaning of A.R.S. § 33–812(A)(2), and did not constitute "obligations provided in or secured by the trust deed" within the meaning of A.R.S. § 33–812(A)(3). It is therefore true that, considered in a vacuum, First American's duties as trustee under the deed of trust did not include the duty to pay appellees' commissions from the proceeds of the trustee's sale. However, because First American was also the escrow agent in this transaction, the inquiry into its duties does not stop with the provisions of A.R.S. § 33–812.

As we previously noted, the paragraph on the face of the escrow instructions that described the terms of the note and deed of

trust which were to constitute part of the purchase price of the property concluded with the following language:

> Seller agrees to direct the Trustee under the Deed of Trust to use the proceeds collected hereunder to satisfy any and all obligations of the Seller, with respect to the property, prior to the release of any funds to Seller.

Because First American was both the escrow agent and the trustee under the deed of trust, this language in effect instructed First American, in its capacity as trustee under the deed of trust, not to release to St. Moritz any proceeds received under the note and deed of trust until it had discharged St. Moritz's obligations under the purchase agreement and escrow instructions. By executing the purchase agreement and escrow instructions, St. Moritz agreed to modify its right under A.R.S. § 33-812(A) to receive the proceeds of any trustee's sale to that extent. Further, by accepting the escrow and simultaneously undertaking the duties of trustee under the deed of trust, First American agreed to perform its duties under A.R.S. § 33-812(A) as modified by the agreement of the parties. If First American had any doubt of its responsibility, and at very least it should have had doubt, it could always have resorted to paying the proceeds into court as provided for by A.R.S. § 33-812(B).

Strict construction of the escrow instructions in favor of appellees as beneficiaries thereof compels the conclusion that First American had a duty to subject any proceeds it received in consequence of the transaction in escrow, whether as escrow holder or as trustee under the deed of trust, to the "separate escrow" established in favor of appellees therein. *See generally Tucson Title Ins. v. D'Ascoli*, 94 Ariz. 230, 234, 383 P.2d 119, 121 (1963). Accordingly, once First American came into possession of the proceeds of the trustee's sale, it was required by its escrow instructions to pay the balance of appellees' commissions out of those proceeds before forwarding the remainder to St. Moritz. It is undisputed that it failed to do so. Summa-

ry judgment was therefore properly rendered for appellees.

Affirmed.

GRANT, C.J., and FIDEL, J., concur.