**H.B.I. CORPORATION,**
**Plaintiff/Respondent,**

v.

**Hugo JIMENEZ and Patricia Jimenez, Husband and Wife, Defendants,**

and

**Ticor Title Insurance Company, Defendant/Appellant.**

No. 57786.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 18, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 23, 1991.

Application to Transfer Denied
March 5, 1991.

Robert C. Jones, Mark A. Bertsch, William Laird Hetlage, Clayton, for defendant/appellant.

James Krispin, Paul Thomas Krispin, Jr., St. Louis, for plaintiff/respondent.

REINHARD, Presiding Judge.

Defendant Ticor Title Insurance Company appeals after a jury verdict against it for breach of its fiduciary duty as escrow agent under an escrow agreement. We affirm.

This case arises out of a contract between a contractor, H.B.I. Corporation, and the owners, Hugo and Patricia Jimenez, for the construction of a home. The owners borrowed funds to finance the construction, and the lender, contractor, and owners entered into an escrow agreement with an escrow agent, Ticor Title Insurance Company. Under this escrow agreement, money was to be placed in escrow by the owners and lender, and the title company was to act as escrow agent in disbursing funds and securing lien waivers. Shortly before completion of construction, the contractor threatened to quit the project unless the owners paid additional funds into the escrow account to pay for additional construction requested by the owners. At that time, the owners terminated the contractor's status as general contractor, and completed the home. Contractor sued the owners for breach of contract and escrow agent for breach of fiduciary duty. Owners filed a counterclaim against contractor for breach of contract. The jury rendered a verdict in favor of the contractor and against the owners in the amount of $16,-000 and against the escrow agent in the amount of $24,000. The jury also found against the owners on their counterclaim. Owners did not appeal.

■ On appeal escrow agent claims that contractor failed to make a submissible case against it for breach of fiduciary duty. We note that contractor's cause of action for failure to strictly follow the terms of the escrow agreement is well recognized as a breach of fiduciary duty. *Eastern Atlantic Transportation and Mechanical Engineering, Inc. v. Dingman*, 727 S.W.2d 418, 423 (Mo.App.1987).

■ The evidence revealed that on July 22, 1985, contractor and owners entered into a contract for the construction of a custom home. The contract was for a "lump sum" price of $239,142.15. Under a "lump sum" contract the contractor builds the home to the contract specifications for a fixed price. This type of contract provides the owners with a price known in advance, and provides the contractor with the ability to increase its profit by minimizing costs. The escrow agent had access to an account containing $325,000.00 which the owners borrowed to finance the construction of their home. The escrow agreement specified that the escrow agent was to pay out $78,000.00 for the lot, and pay itself $1,064.00 for issuing a mortgagee's title insurance policy and $1,794.00 for managing the escrow account.

During the construction period, the owners executed several change orders totaling $36,884.02. These change orders added features to the house beyond those contained in the original contract. One or both owners signed these change orders; the escrow agent did not. All the change order work was substantially completed by the contractor. Each change order noted the cost for the work authorized and included a profit for the contractor of 13% above the cost. The escrow agreement provided that the escrow agent was required to demand in writing the payment of additional funds for extras authorized. After requesting the additional $36,884.02 in work, the owners paid only $10,248.62 into the escrow account. The escrow agent did not make a written demand to the owners to deposit the additional sums required.

The contractor threatened to quit unless the difference was paid into the fund, and then the owners terminated the contractor's status as general contractor.

Upon termination, the residence was substantially completed, according to an inspector employed by the escrow agent to monitor the construction. The contractor informed the escrow agent that it claimed money left in the escrow account. The escrow agent requested that all unpaid bills and vouchers be sent to the escrow agent, and the contractor complied. The house was completed and the contractor did not receive its profit.

■ We first address escrow agent's claim that the trial court erred in overruling the escrow agent's Motions For A Directed Verdict because the contractor failed to produce evidence of a breach of fiduciary duty. In reviewing defendant's contention, we are mindful that a directed verdict is a drastic action and should be granted only if reasonable and honest persons could not differ on the disposition of the case. *Schnelting v. Coors Distributing Co. of Missouri*, 729 S.W.2d 212, 214 (Mo.App.1987). In passing upon a Motion For A Directed Verdict, the reviewing court must give contractor the most favorable view of all the evidence and the benefit of all favorable inferences to be drawn therefrom. *Id.*

In *Southern Cross Lumber Millwork Company v. Becker*, 761 S.W.2d 269 (Mo. App.1988), this court stated:

[a]n escrow agent is charged with the performance of an express trust governed by the escrow agreement with duties to perform for each of the parties, which neither can forbid without the other's consent. When a person acts as the depository in escrow, the person is absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed. Further, a fiduciary relationship is created by the escrow agreement. An escrow agent's failure to strictly follow the terms of the escrow agreement is a breach of his fiduciary duty. The breach of such duty constitutes a tort.

761 S.W.2d at 272 (citations omitted). Paragraph 15 of the escrow agreement states that the escrow agent "will accept and use due care in disbursing funds in accordance with the terms of this agreement."

■ We conclude that there was sufficient evidence to support the submission of contractor's case to the jury. It is clear from the construction contract and escrow agreement that the contractor was entitled to the profit remaining after all costs of construction had been disbursed. The contractor adduced evidence that the escrow agent paid out $36,884.02 pursuant to change orders for items not included in the construction contract. Ms. Sanders, the escrow agent's employee in charge of the escrow account, testified that the escrow agent only collected $10,248.62 for the change order additions. In paragraph 10, the escrow agreement states that owners covenant and agree "[t]o pay, or cause to be paid to escrow agent ... all funds required for all extras hereafter authorized, and all funds for payment of all other items required under this agreement. Should the funds on deposit be insufficient to pay for all such construction costs, within seven (7) days after receiving written demand from escrow agent, Owner shall deliver to escrow agent all additional sums required." The contractor provided evidence that Ms. Sanders understood the owners were to pay additional funds into the account if change orders resulted in extra expenditures.

Furthermore, paragraph 10 of the escrow agreement suggests that the escrow agent should send written demand to the owners requesting the deposit of money for these additional expenditures. Ms. Sanders testified that the escrow agent's file did not contain a copy of a letter telling the owners to pay additional funds. The escrow agent's actions deprived contractor of its 13% profit, and resulted in a reduction in funds available in the account which would be applied to contractor's profit on the original contract.

Contractor also provided evidence that escrow agent did not use due care in pay-

ing subcontractors. Dennis Henderson, president of the contractor, testified that subcontractors were not paid $15,791.17 for work performed on the project, and that contractor had been sued for nonpayment by one subcontractor.

Contractor produced evidence that the escrow agent paid money out of the account for items specifically excluded by the construction contract. Paragraph 6 of the construction contract excluded painting, carpeting, railroad tie walls, wallpaper, phone jacks, antennas and TV outlets, a burglar alarm, landscaping, and a sprinkler system. Ms. Sanders testified that the escrow agent paid out $9,483.01 for these items. The request for payment was submitted by the owner and was paid out of the "miscellaneous" category in the escrow agent's records. Although that category had a budget of $2,422.50, it was overdrawn by $10,648.50. When asked whether anyone at the escrow agent's office ever met to determine whether items excluded under the construction contract should not be paid out of the escrow account, Ms. Sanders stated that "[t]here appeared to be no way to determine it."

Contractor also produced evidence that the escrow agent paid out funds for appliances in excess of the amount stated in the construction contract. Paragraph 5 of the construction contract stated that there was $2,500.00 allowed for appliances in the contract price. The construction contract provided that expenditures beyond the budgeted amount would result in a corresponding increase in the contract price. Ms. Sanders testified that she understood these extra expenditures were an extra cost to the owners, but paid out $1,035.34 over the construction contract amount.

It is clear to us that under our standard of review the contractor made a submissible case against escrow agent for breach of fiduciary duty. We reach this conclusion in spite of escrow agent's claim that recovery is prohibited by various terms of the construction contract and escrow agreement. Many of escrow agent's arguments in this regard are premised upon its claim that contractor breached its contract with own-

ers and failed to fulfill its obligation to owners. Although we have not been supplied with the instructions or counterclaim pleadings, we believe the verdict here demonstrated that the jury implicitly found contractor substantially completed the contract and did not breach it. A review of the escrow agent's specific arguments reveals that the contract did not prevent contractor's recovery.

■ Escrow agent claims that contractor wrongfully requested payment of its profit before all costs of construction were paid in full. Escrow agent supports this contention with the language of paragraph 8 of the escrow agreement, which provided that the contractor agrees not to request payment of his profit until all costs of construction have been paid in full and accepted by owners. We note it is undisputed that escrow agent had the responsibility to disburse the funds. The contractor's president testified that subcontractors were not paid. Escrow agent's argument would allow escrow agent to avoid the payment of profit by withholding payment to one subcontractor. In *O'Neil Lumber Co. v. Allied Builders Corp.*, 663 S.W.2d 326, 330 (Mo.App.1983), with regard to a similar claim, we stated that it "defies logic to conclude that a mere premature request for profits by plaintiff absolved defendant from all other obligations under the escrow agreement." This statement applies here as well.

■ Escrow agent claims that contractor has no right to funds disbursed for change orders because paragraph 5 of the escrow agreement states that contractor agrees to not permit any changes in the contract without written approval of the owners, mortgagee, and escrow agent. The paragraph further states that "[f]ailure to secure such written approval shall render Contractor liable for any cost or damages resulting therefrom and Contractor hereby waives his right to make any additional charge for same." Escrow agent points out that its representatives did not sign the change orders. However, escrow agent's actions prevent it from complaining about the absence of signatures. After receipt of

the unsigned change orders, escrow agent set up change order categories and paid funds out of the account. The absence of signatures was acquiesced to by escrow agent, which had the obligation to refuse payment of unauthorized requests for funds. *See O'Neill Lumber Co. v. Allied Builders Corp.*, 663 S.W.2d 326, 330 (Mo. App.1983).

■ Escrow agent also cites paragraph 9 of the escrow agreement for authority that the contractor lost its claim to any funds on deposit. That provision provides that contractor shall have no claim to any sums on deposit with escrow agent if contractor receives written notice of default and fails to correct the default within seven days of notice. Escrow agent claims that contractor received notice of default, but did not finish the project. We note that the written notice given cited a "vast amount of construction and contract defaults" and then stated that the contractor's status as general contractor was terminated. It did not specify what defaults were alleged, or mention the seven day period given by the agreement to cure the default. Owners terminated the contractor's status as general contractor and escrow agent now complains that the contractor did not finish the project. This provision as utilized was insufficient to cause the contractor to forfeit its right to the funds on deposit.

■ Escrow agent claims that it did not breach the escrow agreement by paying out money for items specifically excluded by the contract. Escrow agent cites paragraph 21 of the escrow agreement, which provides that the escrow agent could complete the project substantially in accordance with plans and specifications if owners and contractor do not. The plans and specifications clearly exclude certain items from the contract, and the evidence demonstrated that the escrow agent paid out money for those excluded items. The language "substantially in accordance" contained in paragraph 21 does not give the escrow agent the right to alter the terms of the construction contract.

■ The escrow agent offers support from several other provisions of the escrow agreement; each fails to prevent contractor from recovering for breach of fiduciary duty. First, the escrow agent again cites the "escrowee may complete" language of paragraph 21 of the escrow agreement for the assertion that it had the right to complete the home after the owners terminated the general contractor status of the contractor. Second, escrow agent claims it had a right to pay out funds to complete the project. Escrow agent directs us to paragraph 22 of the escrow agreement, which provides that the escrow agent may make payments directly for any item without first securing approval of owners or contractor. Third, escrow agent argues that its primary obligation is to the mortgagee, and directs us to several provisions in support of that assertion. Paragraph 15 of the escrow agreement provides that escrow agent, "upon completion, will hold Mortgagee harmless from loss from any mechanics' and materialmen's liens arising from the construction...." Paragraph 21 of the escrow agreement provides that the escrow agent does not guarantee completion to owners or contractor, but will complete the construction to fulfill its obligations to the mortgagee. Paragraph 20 of the escrow agreement provides that upon failure of the contractor to complete construction, the owners are responsible for completing the work and paying all costs. In addition, escrow agent cites *Title Insurance Company of Minnesota v. Construction Escrow Service, Inc.*, 675 S.W.2d 881 (Mo.App.1984), for the proposition that this court recognizes as primary the escrow agent's obligation to the mortgagee.

The provisions discussed above, as well as others cited by escrow agent, do not preclude the contractor from recovering for breach of fiduciary duty. The escrow agreement certainly gives the escrow agent the right to complete construction for the benefit of the mortgagee, and the right to make payments without the approval of the owners or contractor. The agreement also creates a primary obligation to the mortgagee. However, none of the provisions abrogate the escrow agent's responsibility

to the other parties to this agreement. Escrow agent's point is without merit.

Escrow agent's second point is in three parts; however, the only allegation of error preserved in its Motion For New Trial is the contention that contractor's damages are limited to $9,443.01 because of admissions made by contractor's counsel in closing argument. Escrow agent claims contractor's attorney made an admission when it argued in regard to the contractor's damages against the escrow agent:

> This one says, page 6, don't pay for these excluded items: sprinkler systems, burglar alarm, phone jacks, wallpaper, the walls. What did they do when they knew [contractor] had a claim to some of this money after they had been kicked off? They find ways to pay for this out of the escrow account category No. 47.... The amounts are admitted into evidence, and they are in Plaintiff's Exhibit 32, numbered 1 through 5. They total $9,443.01.

Again in rebuttal, contractor's counsel stated that they were seeking, "the amount of money that was paid out of escrow in violation of the agreement." The statements made by the contractor's attorney were not clear and unequivocal admissions that the contractor only claimed damages in the amount of $9,443.01 against escrow agent. The contractor's attorney stated that the items totaling $9,443.01 were damages to the contractor, not the *only* damages. Moreover, MAI 2.01, given by the court, tells jurors that closing argument is not evidence and MAI 2.02 reminds the jurors that they are the fact finders. *See State ex rel. Missouri Highway and Transportation Commission v. Union Terminal Railway Co.*, 633 S.W.2d 429, 431 (Mo.App. 1982).

Judgment affirmed.

CRANDALL, C.J., and STEPHAN, J., concur.