**JOSEPH PROJECTS DIVERSIFIED, INC., Respondent/Cross–Appellant,**

v.

**KNOX–ARIZONA CORPORATION, Appellant/Cross–Respondent,**

and

**William A. Knox, Appellant/Cross–Respondent.**

Nos. 66616, 66840.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 8, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 17, 1996.

Application to Transfer Denied
Jan. 21, 1997.

Donald E. Heck, Clayton, for Appellant/Cross–Respondent.

Irl B. Baris, St. Louis, for Joseph Projects.

Before PUDLOWSKI, P.J., and SIMON and HOFF, JJ.

PER CURIAM.

Joseph Projects Diversified, Inc. (Joseph Projects) brought this cause of action against Knox–Arizona Corporation (Knox–Arizona) to recover a brokerage commission for $75,000 and 2,000,000 shares of stock. The trial court entered judgment in favor of Joseph Projects and Knox–Arizona appeals.[1] Joseph Projects cross-appeals the trial court's denial of interest and a proportionate increase in the shares of stock. We reverse on the direct appeal and the cross-appeal is rendered moot.

Knox–Arizona is an Arizona business involved in mining and processing ores and minerals in the western United States. Joseph Projects is a Missouri corporation which procures loans and arranges financing.

In 1976, Knox–Arizona decided to expand its business and needed $750,000 for that purpose. William Knox, president of Knox–Arizona, approached banks in the St. Louis area seeking funding. After numerous loan denials, Knox decided to seek alternative sources of funds.

In April 1977, Knox met Joseph Lumetta (Lumetta), a loan broker and principal of Joseph Projects. Lumetta told Knox he thought Manning Savings and Loan Association of Chicago (Manning) might lend Knox–Arizona the $750,000.

On May 10, 1977, Joseph Projects and Knox–Arizona entered into a brokerage agreement. Joseph Projects agreed to "[arrange] a method of financing" for $750,000 on "rate, terms and conditions acceptable to [Knox–Arizona]." In return, Knox–Arizona agreed to pay Joseph Projects a fee of ten percent of the amount of the loan and 2,000,000 shares of Knox–Arizona's corporate stock. The agreement provided the interest for the loan would not exceed ten and one-fourth percent per annum and the loan would be secured by a first mortgage on property and all equipment owned by Knox–Arizona for an appraised value of $675,000. The agreement also provided Joseph Projects was the sole and exclusive agent of Knox–Arizona for a thirty day period.

Lumetta's testimony at trial indicated that Joseph Projects obtained a signed loan commitment (Manning document) from Manning and that all Knox–Arizona needed to do to obtain that financing was to present the loan commitment to the Bank of St. Louis.[2] Over objection, Lumetta testified the Bank of St. Louis previously told Knox–Arizona it would provide interim financing immediately based

---

1. William Knox also appealed the trial court's judgment. However, because of his death following the filing of this appeal and no substitution of party, his appeal was ordered dismissed. The cross-appeal of Joseph Projects as to William Knox was also ordered dismissed.

2. Curiously, the Manning document is dated April 25, 1977, fifteen days prior to the execution of the brokerage agreement between Joseph Projects and Knox–Arizona. The Manning document provided that unless Knox–Arizona gave written notice of its acceptance by May 26, 1977, the Manning document would become null and void.

upon a loan commitment. Lumetta admitted, however, he never communicated with the Bank of St. Louis directly about interim financing. According to Lumetta, Knox made statements that he was unhappy about paying the commission and stock to Joseph Projects. Lumetta testified he tried unsuccessfully on numerous occasions to talk to Knox about the transaction and that when he finally met with Knox in August 1977, nothing was accomplished.

Knox testified Joseph Projects never produced an acceptable loan commitment and, in fact, the first time he ever saw the Manning document was well into the litigation and years after the expiration of the brokerage agreement. Knox further testified that even if he had seen the Manning document while the brokerage agreement was in effect, he would have refused it because it was unacceptable for Knox–Arizona's purposes. Knox testified the Manning document was unacceptable because it did not provide for an immediate loan of cash which Knox–Arizona desperately needed. Instead, it required Knox–Arizona to first obtain a loan from a local lender and then, twenty-nine months later, Manning would purchase a ninety percent participation in the local bank funding. Knox testified the Manning document did not provide for funding at all if a local lender could not be found and that he had previously been denied a loan by the Bank of St. Louis. Additionally, the Manning document provided that the interest rate on the loan would be three percent over the prime rate as set by the First National Bank of Chicago, as of September 25, 1979, or at the interest rate of ten percent per annum, whichever was higher. Knox testified this was unacceptable to Knox–Arizona.

Knox also testified that while the brokerage agreement was in effect, he attempted to secure a $50,000 loan for Knox–Arizona. Knox testified this loan was already in process prior to the brokerage agreement and it was only for day to day operations.

Joseph Projects brought this cause of action against Knox–Arizona seeking the bro-kerage commission and shares of stock. Joseph Projects also asked for interest and a proportionate increase in the shares of stock. Joseph Projects also sought relief against Knox individually for his alleged personal guarantee of the brokerage agreement. The trial court found in favor of Joseph Projects, ordered Knox–Arizona to issue 2,000,000 shares of stock to Joseph Projects, and entered a judgment for $75,000 in favor of Joseph Projects and joint and several liability against Knox–Arizona and Knox individually.

Regarding the interest of the $75,000 brokerage commission and the enhancement of the 2,000,000 shares of stock, the trial court found Joseph Projects was not entitled to this relief because of "[Joseph Projects'] laches in bringing this suit to trial." This appeal and cross-appeal followed. The appeal against Knox individually has been dismissed.

■ Review of this court-tried case is governed by Rule 73.01 and the principles set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). It requires that the decision of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

■ Knox–Arizona contends in its first point that the brokerage agreement was unenforceable against it because Joseph Projects breached the agreement by failing to procure a loan commitment. Knox–Arizona argues the Manning document was not a loan commitment because it contained a condition precedent which was never satisfied. It argues specifically that the Manning document provided that Manning would lend Knox–Arizona $750,000 if, and only if, a local savings and loan association, bank, or insurance company agreed to originate the loan and retain ten percent of the loan. Then, twenty-nine months later, Manning would purchase a ninety percent interest in the loan.[3] Be-

---

**3.** Paragraph 3 of the Manning document, entitled "Participation," provides as follows:

Borrower shall obtain a local savings and loan association, bank or insurance company to originate said loan and retain ten percent

cause Manning would only lend the money if a local interim lender could be found, Knox–Arizona contends it was Joseph Projects' obligation under the brokerage agreement and as Knox–Arizona's exclusive agent to take the necessary steps to secure a local loan. Joseph Projects did not take these steps and, consequently, the condition precedent was not met. As a result, the Manning document did not provide a method of financing and Knox–Arizona was not required to accept it as such or pay Joseph Projects the commission.

■ A "condition precedent" is one that must be performed before the agreement becomes obligatory, and which calls for the happening of some event or the performance of some act (after the terms of the contract have been agreed on) before some act dependent thereon must be performed. Black's Law Dictionary, Fifth Edition; *O'Neil Lumber Co. v. Allied Builders Corp.*, 663 S.W.2d 326, 329–330 (Mo.App.1983).

Joseph Projects concedes that obtaining a local interim loan was a condition precedent to receiving a loan from Manning. But, Joseph Projects urges, it was Knox–Arizona's obligation to procure the interim loan. We disagree.

The brokerage agreement states Joseph Projects will procure a method of financing for Knox–Arizona in exchange for a brokerage commission of $75,000 and 2,000,000 shares of Knox–Arizona's corporate stock. It further provides, in relevant part:

NOW THEREFORE, for and in consideration of the mutual promises hereinafter contained, and other good and valuable considerations, receipt of which is hereby acknowledged, parties agree:

1. *BORROWER hereby grants unto JO-SEPH the sole and exclusive right to act as it's Agent in arranging a method of financing* on rate, terms and conditions acceptable to BORROWER, which BORROWER herein accepts according to the terms and conditions herewith specified.

1a. *The sole and exclusive right to represent and negotiate in behalf of BORROW-*

*ER shall continue for a period of thirty (30) days, and BORROWER is to deliver to JOSEPH all of the information and documents necessary for presentation of the loan application,* and for such further period of time as may be necessary to conclude the negotiations commenced during such time ...

6. BORROWER agrees to furnish JOSEPH all of the necessary information and documents *so that JOSEPH can properly present the loan application to the lender or lenders for their consideration* ...

8. BORROWER agrees to comply with all of the lender's loan requirements and *to deliver to JOSEPH all documents required for acceptance of the loan* promptly and in sufficient time to complete the acceptance of the loan within ten (10) days after notice from the lender of approval of the loan....

(emphasis added). A rational reading of this language reveals that in order for Joseph Projects to be eligible to receive its commission, it must, as Knox–Arizona's sole and exclusive agent, take all steps necessary to secure a method of financing. This, by necessity, includes seeking the local interim financing and, thus, satisfying the condition precedent of the Manning document. It is clear from the language of the brokerage agreement that this was the parties' intention and we do not see anything in the brokerage agreement that indicates otherwise. The brokerage agreement does not state it was Knox–Arizona's obligation to seek interim financing. In fact, all evidence is to the contrary. Lumetta testified at trial that Joseph Projects, pursuant to the brokerage agreement, was Knox–Arizona's sole and exclusive agent to get a loan and that for Knox–Arizona to attempt to obtain a loan on its own would be a violation of the brokerage agreement. Additionally, Knox testified that when he told Lumetta he procured a $50,000 loan for day to day operations, Lumetta told Knox that he disapproved of Knox's actions in obtaining the $50,000 loan.

Lumetta testified, over Knox–Arizona's hearsay objection, that the Bank of St. Louis

---

(10%) of said loan. Manning Savings and Loan Association agrees to purchase a ninety

percent (90%) participation therein by form as mutually agreed to by the parties.

# 648

told Knox prior to the Manning document that it would provide interim financing immediately based upon a loan commitment. However, Knox denied this allegation and Joseph Projects presented no documentation indicating that the Bank of St. Louis had made such a commitment to Knox. No officer of a bank was called to testify that it would make an interim loan. Other than Lumetta's testimony, there is nothing in the record that establishes that the Bank of St. Louis or any local bank would be willing to loan Knox–Arizona the $750,000. In fact, the record reflects that the Bank of St. Louis and numerous other banks had previously refused to loan Knox–Arizona money.

Here, Joseph Projects' promise to procure a method of financing for $750,000 was never fulfilled. Knox–Arizona was never eligible to receive the $750,000 because Joseph Projects did not arrange interim financing which was part and parcel to a loan commitment from Manning. Because the condition precedent was not satisfied, the Manning document did not represent a method of financing and, consequently, Knox–Arizona had no duty to pay Joseph Projects the commission.

Additionally, Knox–Arizona asserts that even if it had known of the Manning document, it was not obligated to pay Joseph Projects a commission because the terms of the Manning document were unacceptable. Because of our determination Joseph Projects did not obtain a method of financing and Knox–Arizona had no duty to pay Joseph Projects the brokerage commission, we need not address this issue. However, we do note several material differences between the "acceptable" terms of the loan as outlined in the brokerage agreement and the terms of the Manning document. The brokerage agreement requires that the interest rate on the loan not exceed ten and one-fourth percent per annum, while the Manning document states the interest rate of the loan "will be three percent (3%) over the prime rate as set by the First National Bank of Chicago, as of September 25, 1979, or at the interest rate of 10% per annum, whichever is the higher rate." Since September 25, 1979 was more than two years in the future, the resultant interest rate could be considerably higher than the agreed upon ten and one-fourth percent ceiling rate.

The Manning document also required Knox–Arizona to pay a "non-refundable commitment fee in the amount of $7,500.00 (1%)" to Manning. There is no mention of a commitment fee in the brokerage agreement.

Finally, the Manning document provides that the "application to close into the mortgage loan pursuant to this commitment shall not be made by the borrower or interim Lender prior to twenty-nine (29) months from date of this letter of commitment," even though it is undisputed Knox–Arizona was seeking immediate financing.

Because of our disposition of point one on appeal, we need not address Knox–Arizona's second point on appeal that the trial court erred in allowing Lumetta's testimony that the Manning document was a loan commitment without proper foundation. Similarly, Joseph Projects' cross-appeal alleging that the trial court erred in finding Joseph Projects guilty of laches and not granting an enhanced number of shares of stock or interest to Joseph Projects is rendered moot and, accordingly, we do not address it.

There is no substantial evidence to support the judgment of the trial court. The judgment of the trial court is reversed.