Rajen JHALA, Respondent,

v.

Dipak V. PATEL, Appellant,

and

Jay Vidyalankar, Defendant.

No. ED 83667.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 28, 2004.

Thomas M. Blumenthal, Clayton, MO, for appellant.

J. Vincent Keady, Jr., Clayton, MO, for respondent.

PATRICIA L. COHEN, Presiding Judge.

Dipak Patel appeals from the trial court's judgment ordering specific performance of indemnity and release provisions contained in a stock sale agreement. We affirm in part and reverse in part.

### Background

Mr. Patel agreed to purchase Rajen Jhala's half-interest in two hotel corporations, Bhavi Corporation and Subhali Corporation. Jay Vidyalankar, who owned several other hotel corporations with Mr. Patel, controlled the remaining half-interest.

To memorialize the purchase, Mr. Jhala, Mr. Patel, and Mr. Vidyalankar entered into a written agreement which provided, in pertinent part, that Mr. Jhala would sell his one-half interest in the two corporations to Mr. Patel for $300,000.00. Mr. Patel agreed to pay $100,000.00 upon signing the agreement and $200,000.00 following the sale of another property which Mr. Vidyalankar and Mr. Patel owned.

The agreement also provided that the stock would be pledged as collateral and held in escrow by Rajesh Vora, an accountant previously used by Mr. Jhala and Mr. Vidyalankar. Mr. Vora, as escrow agent, was required, upon full payment to Mr. Jhala of the remaining $200,000.00, to release the stock to Mr. Patel.

The agreement contained an indemnity provision which declared that:

Mr. Vidyalankar (as an individual and as an Officer of both corporations) and Mr. Patel agree to indemnify Mr. Jhala (including against any attorneys fees and costs) from any expense or liability arising out of Mr. Jhala's ownership or operation or operation of both corporations either as a shareholder, director, agent or employee, including any actions in connection with obtaining of financing, Mr. Jhala's personal guaranties on the mortgages and leases for the corporations and in addition, Mr. Vidyalankar and Mr. Patel agree to use their best efforts to obtain release of Mr. Jhala's name from all of the leases and the mortgages on the corporate property, as soon as possible.

In addition, the parties agreed that the agreement "cannot be revised, modified or changed in anyway [sic], shape or form, unless all the parties agree to and sign off."

Upon signing the agreement, Mr. Patel paid the initial $100,000.00 required by the agreement. Shortly thereafter, Mr. Patel faxed a memorandum to Mr. Jhala stating that he was aware Mr. Jhala had cashed his $100,000.00 check and was reminding him of his obligation to "supply Mr. Vora the stock certificates." Mr. Jhala responded with a letter explaining the delay in forwarding the certificates to Mr. Vora and assuring him "that stocks *will* go to Mr. Rajesh Vora." (emphasis in original).

Mr. Jhala subsequently endorsed each of the stock certificates to Mr. Patel. Thereafter, the original stock certificates were sent to Mr. Vora. Several months after the completion of the initial transaction, Mr. Jhala wrote to Mr. Patel and Mr. Vidyalankar regarding the $200,000.00 balance due per the agreement. Mr. Jhala stated, among other things, that if the balance was paid with a cashier's check the stocks would be released on the same day as payment and if paid by a personal check the stocks would be released when the check cleared.

Prior to the payment of the $200,000.00 to Mr. Jhala, Mr. Patel testified that he and Mr. Vidyalankar orally agreed that Mr. Vidyalankar would pay the remaining $200,000.00 and reimburse Mr. Patel for the original $100,000.00. Mr. Patel claimed at trial that he thereafter washed his hands of the agreement.

Subsequent to the correspondence regarding the balance due, Mr. Jhala received a $200,000.00 wire transfer to his account. In accordance with the agreement, Mr. Jhala acknowledged payment to Mr. Vora and authorized him to release the stock. Mr. Vora released the original

stock certificates, which were in Mr. Patel's name, to Mr. Vidyalankar.

Following his receipt of full payment and subsequent release of the stock certificates and, despite the agreement's release and indemnity provisions, Mr. Jhala was named as a defendant in several lawsuits brought by financial institutions against Subhali Corporation and Bhavi Corporation. Mr. Jhala, through his attorneys, wrote to Mr. Patel advising him of the lawsuits and demanding indemnification. Two of the suits resulted in judgments against Mr. Jhala in the amount of $1,523,-095.00 [1] (Imperial Capital Bank) and $75,565.00 (Mid America Capital Services, Inc.). In spite of the demand letter, neither Mr. Patel nor Mr. Vidyalankar complied with the indemnity and release provisions of the agreement.

In March 2001, Mr. Jhala filed the underlying action against Mr. Patel and Mr. Vidyalankar, seeking specific performance of the indemnity and release provisions of the agreement. Mr. Vidyalankar did not answer and the trial court entered a default judgment against him.[2] Following a bench trial, the trial court found in favor of Mr. Jhala and ordered Mr. Patel to: (1) indemnify Mr. Jhala from any expenses or liability arising out of debts or obligations associated with Subhali and Bhavi corporations; (2) obtain the release of Mr. Jhala's obligations including but not limited to leases, mortgages and guarantees associated with Subhali and Bhavi; (3) satisfy judgments entered against Mr. Jhala in favor of Imperial Capital Bank and Mid America Capital Services, Inc.; and (4) pay Mr. Jhala's attorney's fees in the amount of $33,822.00, plus interest. This appeal followed.

### Standard of Review

We sustain the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In addition, the trial court is afforded much discretion in deciding whether to award the equitable remedy of specific performance. *McBee v. Gustaaf Vandecnocke Revocable Trust*, 986 S.W.2d 170, 173 (Mo. banc 1999).

### Discussion

#### A. Specific Performance

In his first point, Mr. Patel alleges that the trial court erroneously applied the law in ordering specific performance of the indemnity and release provisions of the agreement because Mr. Jhala failed to properly perform his obligations under the agreement, resulting in a failure of consideration and a modification of the agreement. Mr. Jhala counters that he fully performed his obligations under the agreement.

It is well-settled that a party seeking specific performance "must prove by clear and convincing evidence that he has performed (or tendered performance of) his portion of the contract," before he is entitled to relief. *See Drysdale v. Estate of Drysdale*, 689 S.W.2d 67, 71 (Mo.App. W.D.1985). We agree that Mr. Jhala met this burden.

Mr. Jhala's obligations are contained in the following terms of the agreement:

Mr. Jhala has agreed to sell his stocks in BHAVI Corporation and SUBHALI Corporation to Mr. Dipak V. Patel. Mr. Jhala has agreed to sell his fifty percent

---

1. This amount includes interest the trial court awarded in the judgment here.

2. Mr. Vidyalankar has not appealed the judgment against him.

(50%) interest in both corporations for the total sum of $300,000.00, which is to be paid $100,000.00 cash (or Cashiers Check), at closing, with a $200,000.00 [sic] payable upon sale of Harley, Wisconsin property.

\* \* \*

*The stocks being sold will be pledged as collateral and held by Mr. Rajesh Vora, CPA, as the Escrow Agent. Upon full payment of balance [sic] of $200,000.00, Mr. Vora will release the said stocks to Mr. Patel.* Mr. Jhala will resign as an Officer and Director from both the corporations upon payment of first $100,000.00, but Mr. Patel may vote the stock until the stocks are released to him unless there is a default.

(Emphasis added).

The record demonstrates that Mr. Jhala performed all the required terms of the agreement, in that: (1) he requested the attorney for the two corporations to prepare the stock certificates after he received the initial $100,000.00 payment; (2) he endorsed the stock certificates to Mr. Patel; (3) he delivered the stock certificates to Mr. Vora; and (4) he authorized Mr. Vora to release the stock certificates. Nevertheless, Mr. Patel argues that Mr. Jhala failed to perform his obligations because Mr. Vora, the escrow agent, did not deliver the stock certificates directly to Mr. Patel.

The difficulty with Mr. Patel's argument is that the agreement did not require Mr. Jhala to do anything more than deliver the

stock certificates to Mr. Vora. Thereafter, the agreement required Mr. Vora, rather than Mr. Jhala, to release the certificates to Mr. Patel upon Mr. Jhala's receipt of $200,000.00. Contrary to Mr. Patel's contention, the agreement nowhere requires Mr. Jhala to specifically instruct Mr. Vora to deliver the stock certificates directly to Mr. Patel.[3]

Moreover, even assuming without deciding that Mr. Vora violated his fiduciary responsibilities, Mr. Patel's complaint is with Mr. Vora. *See H.B.I. Corp. v. Jimenez*, 803 S.W.2d 100, 102 (Mo.App.1990). On this record, Mr. Patel is not, by virtue of Mr. Vora's conduct, relieved of his obligations to Mr. Jhala. Likewise, we disagree that Mr. Vora's conduct constitutes "a material change in the agreement of indemnity" sufficient to alter Mr. Patel's obligations to Mr. Jhala. Because we find that the record establishes that Mr. Jhala performed his contractual obligations, Point I is denied.

In his second point, Mr. Patel contends that because the parties allegedly believed the agreement had been altered or abandoned, the trial court erred when it ordered specific performance. Mr. Jhala argues that he did not abandon or modify the agreement, but performed his obligations under the agreement.

To support his theory of modification or abandonment, Mr. Patel again relies primarily on Mr. Vora's failure to deliver the stock certificates directly to Mr. Patel. More specifically, Mr. Patel argues that

3. In any event, "when the condition of performance is completed, ownership of the property in the escrow account immediately transfers." *McCarthy Bldg. Companies v. City of St. Louis*, 81 S.W.3d 139, 144 (Mo.App. E.D.2002) (*citing Boatmen's Nat'l Bank of St. Louis v. Dandy*, 804 S.W.2d 783, 785, 786 (Mo.App.E.D.1990)) (when condition of escrow is performed, title to property passes).

Thus, as soon as Mr. Jhala received the $200,000.00, the stock certificates in the escrow account transferred to Mr. Patel whether Mr. Vora delivered them or not. Accordingly, we are not persuaded by Mr. Patel's argument that the agreement lacked consideration because the evidence fails to establish that Mr. Patel physically possessed the stock.

because he never authorized Mr. Vora to deliver stock to Mr. Vidyalankar, Mr. Vora's subsequent delivery to Mr. Vidyalankar constitutes an abandonment of the agreement on the part of Mr. Jhala.

To prove that the parties abandoned the agreement, Mr. Patel must demonstrate the existence of either express mutual consent or implied consent through the actions of the parties. *Schwartz v. Shelby Const. Co.*, 338 S.W.2d 781, 788 (Mo.1960). Actions indicative of implied consent must be "positive, unequivocal and inconsistent with an intent to be further bound by the contract." *Id.* (internal citation omitted). Moreover, the actions relied on must be those of the parties to the contract, not a non-party, such as Mr. Vora.

Here, there clearly was no express consent to abandon the agreement.[4] Accordingly, we examine the conduct which Mr. Patel claims evidences an intent to abandon the agreement: "the delivery of the stock to Mr. Vidyalankar, the return of the $100,000 to Mr. Patel, and the preparation, if not filing, of tax returns with the federal government showing Mr. Jhala to still be the owner of the stock [which was the subject of the agreement], and the significant reduction of loans to shareholders in the year of the transaction while the corporation was facing large losses." The record does not establish that Mr. Jhala performed any of the acts which ostensibly demonstrate his abandonment. Rather, based on the evidence in the record, either Mr. Vidyalankar or Mr. Vora are primarily responsible. Mr. Patel cannot properly rely on Mr. Vora's and Mr. Vidyalankar's acts to establish that Mr. Jhala abandoned the agreement.

Point II is denied.

■ In his third point, Mr. Patel contends that the trial court erred in ordering specific performance when an award of monetary damages was capable of adequately and completely remedying Mr. Jhala's loss.

Having proved the existence of a valid contract requiring indemnification "from any expense or liability," Mr. Jhala is entitled to have its provisions specifically enforced. As stated in CORBIN ON CONTRACTS, "[o]ne who has contracted to indemnify another and save him harmless with respect to some obligation by which he is bound can generally be compelled by a decree for specific performance to discharge the obligation and thus exonerate the obligor." 12 A.L. CORBIN, CORBIN ON CONTRACTS, Sec. 1150 (interim ed.2002). Moreover, money is neither an adequate substitute for Mr. Patel's continuing obligation to indemnify Mr. Jhala nor for Mr. Patel's obligation to obtain Mr. Jhala's release from the corporations' leases, mortgages and/or guarantees. Thus, the trial court properly ordered Mr. Patel to "indemnify [Mr. Jhala] from any expense or liability arising out of debts or obligations associated with Bhavi Corporation and Subhali Corporation ... [and] to obtain the release of [Mr. Jhala's] obligations associated with Bhavi Corporation and Subhali Corporation including but not limited to leases, mortgages, and/or guarantees associated therewith."

■ To the extent that Mr. Patel is arguing that the trial court was not entitled to award specific performance *and*

---

4. The fact that Mr. Patel believed he abandoned the agreement is not material. As the Southern District has held, "... neither a delegation of performance by an obligor, nor a contract with the obligor by the person to whom the performance is delegated to assume the obligor's duty, extinguishes that duty or prevents recovery of damages from the obligor if the duty is not performed." *Missouri Pac. R.R. Co. v. Rental Storage & Transit Co.*, 524 S.W.2d 898, 906 (Mo.App. 1975). (citations omitted).

monetary relief, we also disagree. As our Supreme Court recently held in *State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 472 (Mo. banc 2004), "[a]ny circuit court with jurisdiction over the parties and a controversy can render whatever relief is required, be it equitable or a request for damages." In this case, Mr. Jhala did not seek damages to remedy a claim at law, but rather sought specific performance "and such other and further relief" as the trial court deemed proper. As the Southern District has held, "[t]he law is well settled that even in those instances where a party does not seek particular relief, a court of equity can properly undertake to do full, adequate and complete justice between the parties when justified by the evidence." *Kopp v. Franks*, 792 S.W.2d 413, 425 (Mo.App. S.D.1990); *see also* 25 RICHARD A. LORD, WILLISTON ON CONTRACTS Sec. 67.32 (4th ed. 2002) ("[A] court sitting in equity may award monetary compensation in addition to specific performance where necessary to effectuate full and complete relief . . . .").[5]

Point III is denied.

### B. Calculation of the Monetary Award (Imperial Capital Bank)

 In his fourth point, Mr. Patel argues that the trial court erred in ordering him to satisfy a judgment in the amount of $1,523,095.00 entered in favor of Imperial Capital Bank. Mr. Jhala contends that because he proved that he had incurred a liability by virtue of the judgment rendered in the Imperial Capital Bank litigation, he is entitled to recover the amount of the final judgment.

Our Supreme Court has recognized that: "[a] promise to indemnify against the existence of a liability is broken as soon as the liability is incurred, and the promisee is entitled to recover damages *based upon the amount of his liability* [.]" *Moberly v. Leonard*, 339 Mo. 791, 99 S.W.2d 58, 63 (1936) (emphasis added). Here, the Ohio Court of Common Pleas entered a Judgment Decree in Foreclosure against Mr. Jhala and Mr. Vidyalankar, jointly and severally. The decree provided, in relevant part:

A. for judgment against defendants Subhali Corporation, Jay R. Vidyalankar, and Rajen Jhala, individually and jointly and severally, in the amount of $861,916.17, plus interest of $96,966.00, late charges of $13,885.79, prepayment fee of $8,619.16, additional expenses to cover lapsed insurance of $7,279.63, costs of $2,242.00 and attorneys fees of $7,385.00, with interest continuing to accrue at 18% per annum until the debt is paid in full and such other late fees, costs, and attorneys fees as may reasonably be accrued until the debt is paid in full;

B. for judgment that plaintiff's Mortgage be declared to be a valid and subsisting first and best lien upon the Mortgaged Property . . .;

C. for judgment that plaintiff's security interest in the Collateral be declared to be a valid and subsisting first and best lien on the Collateral . . .;

D. for judgment that plaintiff's Mortgage and security interest be foreclosed;

---

5. While we acknowledge the *Leonardi* decision calls into question the continued validity of a trial court, as opposed to a jury, awarding monetary relief where the equitable claims have been denied or where the trial court chooses not to order specific performance, we conclude that given the factual and procedural posture of this case, *Leonardi* does not compel a determination that the trial court erred in awarding money as a component of equitable relief.

E. for judgment that all liens be marshaled;

* * *

G. for judgment that *an Order of Sale be issued* to the Sheriff of Stark County, Ohio, *directing to appraise, advertise, and sell the Premises;*

H. for judgment that *upon the sale of the Mortgaged Property and Collateral, the proceeds of such sale be paid to the plaintiff to satisfy the amount of its existing lien and the interest, disbursements, and advancements for insurance, taxes, and matters related to the Mortgaged Property, costs herein expended, and all attorneys fees for matters associated with this proceeding.*

(Emphasis added).

Mr. Jhala testified that, as of the time of trial, the Ohio judgment, including interest, amounted to $1,523.095.41. He also stated that the "Mortgaged Property" had a book value of over $1,000,000.00. In addition, Mr. Jhala averred that it was his understanding that the property had been foreclosed and sold. However, the trial court's judgment does not reflect a deduction for the proceeds of the sale of the foreclosed property.

■ On appeal, Mr. Jhala argues that no deductions are required because Mr. Patel agreed to indemnify him against any "liability," and "[i]n the case of indemnity against liability, the covenant is breached as soon as the indemnitee incurs liability and actual loss need not be shown to recover." While Missouri courts recognize a distinction between indemnity agreements that call for an indemnity against "liability" and those against "loss," the distinction is irrelevant when the amount of the liability is known. *See Kracman v. Ozark Elec. Co-op., Inc.,* 816 S.W.2d 688, 691 (Mo.App.

S.D.1991). Moreover, the "right of indemnity is essentially equitable in nature . . . [and][t]hus, an award of indemnity should follow traditional concepts of equity[.]" *Carpenter–Vulquartz Redevelopment Corp. v. James H. Barickman Associates,* 886 S.W.2d 634, 638 (Mo.App. W.D.1994). Awarding the full amount of the judgment without taking into account the court-ordered sale of the property constitutes a windfall to Mr. Jhala and is error. Accordingly, we reverse and remand for a redetermination of the amount of the Ohio judgment, consistent with this opinion.

## C. Mr. Vidyalankar's Affidavit

■ In his fifth point, Mr. Patel claims the trial court erred when it refused to admit Mr. Vidyalankar's affidavit over Mr. Jhala's objection at trial. Mr. Jhala responds that the trial court correctly excluded the affidavit. We agree with Mr. Jhala.

Missouri courts have consistently held without exception that in the absence of a stipulation of the parties, there is no authority for admitting an affidavit as evidence at trial. *State ex rel. Missouri Highway & Transp. Comm'n v. Zeiser Motors, Inc.,* 949 S.W.2d 106, 108 (Mo.App. E.D.1997); *see also Gilboe v. Doerflinger Realty Co.,* 614 S.W.2d 4 (Mo.App. E.D. 1981); *Eames v. Eames,* 463 S.W.2d 576 (Mo.App.1971). It is undisputed that the parties did not stipulate to the admission of the affidavit of Mr. Vidyalankar. Accordingly, we find that the trial court did not err when it excluded the affidavit.

Point V is denied.

## D. Attorney's Fees

■ In his sixth point, Mr. Patel argues that the trial court's award of attorney's fees should be reduced from $33,822.00 to $28,522.11. In support, Mr.

Patel claims that $2,030.50 of the award was a surplus and $3,238.50 of the award was unrelated to claims against Bhavi Corporation or Subhali Corporation.[6] In response, Mr. Jhala concedes that the attorney's fee award should be reduced by $2,030, but asserts that it should be affirmed in all other respects.

■■■ Because both parties agree that $2,030.50 [7] was improperly included in the attorney's fee award, we need only consider whether the trial court erred when it awarded $3,238.50 in fees incurred in connection with Mr. Jhala's attempt to perfect and register the default judgment rendered against Mr. Vidyalankar in this litigation. Mr. Patel argues that these amounts are unrelated to claims against Subhali and Bhavi Corporations and are not recoverable in this litigation.

The agreement's indemnity provision provides for the recovery of any "expense or liability," including attorney's fees and costs, "arising out of Mr. Jhala's ownership or operation of both corporations[.]" Mr. Patel does not contest that this provision allows for attorney's fees arising out of Mr. Jhala's attempt to enforce the indemnity provision against him. Because the provision broadly permits attorney's fees and costs arising out of Mr. Jhala's ownership, and because Mr. Patel has not contested the application of this provision to attorney's fees and costs which Mr. Jhala incurred as a result of this litigation, we conclude that the trial court did not err in allowing Mr. Jhala to recover $3,238.50 in fees related to the default judgment against Mr. Vidyalankar.

### Conclusion

The trial court's judgment is affirmed to the extent it awards specific performance of the indemnity and release provisions of the agreement. However, we reverse the trial court's judgment with respect to the award of $1,523,095.00 in satisfaction of the judgment entered in favor of Imperial Capital Bank and remand for a hearing consistent with this opinion. In addition, we reverse the trial court's award of $33,822.00 in attorney's fees and remand for entry of an award of $31,791.50 in attorney's fees.

KATHIANNE KNAUP CRANE, J., Concurs.

ROBERT G. DOWD, JR., J., Concurs.

---

6. We note that when these amounts, as stated by Mr. Patel, are subtracted from the $33,822.00 attorney's fee award, the result is $28,553.00, not $28,522.11.

7. While Mr. Jhala's brief states this amount as "$2,030," at trial his attorney agreed that the amount was $2,030.50.